(No. 44088█

JAMES Q. McGRATH, Appellant, v. ALFRED J. ROHDE
*et al.*—(Alfred J. Rhode, Appellee.)

*Opinion filed Oct. 2, 1972.—Rehearing denied Nov. 29, 1972.*

DAVIS, J., took no part.

JACK F. CLIFFORD and JOSEPH M. O'CAL-
LAGHAN, both of Chicago, for appellant.

RATHJE, WOODWARD, DYER & BURT, of Whea-
ton (PETER A. ZAMIS, of counsel), for appellee.

MR. JUSTICE WARD delivered the opinion of the
court:

The plaintiff, James Q. McGrath, brought suit in the
circuit court of Du Page County against Alfred J. Rohde
and William Link, on his own behalf, as the administrator
of the estates of Bonnie McGrath and Matthew McGrath,
and as the father and next friend of Michael McGrath and
Julia McGrath. The plaintiff sought to recover for the
wrongful deaths of two of his children, Bonnie and
Matthew, for his own injuries and for injuries sustained by
two of his other children, Julia and Michael. The claims

arose from a collision involving three vehicles on November 28, 1965, on the Lake Street extension of the Eisenhower Expressway. Prior to trial, on the plaintiff's motion, the defendant Link was dismissed from the suit. At the close of the plaintiff's case the trial court granted defendant Rohde's motion for a directed verdict, and on appeal the appellate court affirmed the judgment which had been entered. *(McGrath v. Rhode, 130 Ill.App.2d 596.)* We granted the plaintiff's petition for leave to appeal.

The plaintiff and his four children at about 9:40 P.M. were driving in a westerly direction on the Lake Street extension of the Eisenhower Expressway in the plaintiff's station wagon. He passed Link's car about 100 feet east of the point at which the Tri-State Tollway passes over the extension. Link at the time was in the left lane traveling at about 55 miles per hour and the plaintiff was in the right lane driving at about 60 miles per hour. The plaintiff then turned into the left lane, passed the station wagon of Rohde, whom we shall refer to as defendant, and returned to the right lane. It was after the plaintiff had returned to the right lane that his vehicle struck an abutment, which is part of the protective railing where the Lake Street extension bridges certain railroad tracks and a road. The evidence shows that on striking the abutment, the plaintiff's wagon was thrown up and pivoted in a clockwise direction, with its front end at the place of impact as the pivot point. The defendant applied brakes and swerved to the left in an attempt to avoid hitting the wagon, but he struck it while it was still in the air. The right front fender of the defendant's vehicle hit the descending right rear side of the plaintiff's wagon. This impact forced the defendant's wagon into the left lane and into the path of the car driven by Link, and that car's right front fender hit the defendant's left front door. The plaintiff and Michael and Julia McGrath were injured seriously. The injuries to the other two children, Bonnie and Matthew, were fatal.

The plaintiff testified that at the site of the collisions the Eisenhower Lake Street extension is graded and curves to the right, *i.e.,* to the north, changing the direction of traffic from west to north. At the time of the collision the three vehicles were traveling north. He testified that he had observed the tailgate and rear bumper of his wagon earlier on the day concerned and that they were undamaged. He recalled passing to the right of one car, passing a second vehicle on the left and then returning to the right lane about 100 feet from the abutment. His next recollection was awakening in the hospital. He had been unconscious for about three days. He testified that after the collision he had no memory of anything that had occurred after he had left his mother's house. (He was returning from a visit to his mother's home at the time of the accident.) After receiving hypnotic treatment from a physician he was able to recall the events preceding the collision but not the collision itself.

The plaintiff at trial called the defendant under section 60 of the Civil Practice Act (Ill.Rev.Stat. 1965, ch. 110, par. 60) as an adverse witness. The testimony of the defendant, who had been driving with his two sons, as to the vehicles' positions prior to the collisions was essentially the same as the plaintiff's. He said that he was traveling about 45 to 50 miles per hour and was just coming from under an overpass when the plaintiff passed him at a point about 700 feet from the abutment, which the plaintiff later struck. He said that the plaintiff's wagon, in passing his, came very close to the side of his wagon as the plaintiff was moving into the right lane in front of him. He immediately braked and there was no contact between the two wagons until after the plaintiff had driven into the abutment. He testified that, as the plaintiff's wagon flew up and turned clockwise, he swerved to the left but struck the plaintiff's wagon as it was descending. He testified that this was the only contact between the two wagons but that Link's car then crashed into the left side of his vehicle. The

defendant testified that though he had previously said at the inquest that the collision with Link's car had occurred about five seconds after his collision with the plaintiff's wagon, he realized he had been in error and that the interval between the two collisions was less than 5 seconds. On examination by his own attorney the defendant said that his wagon was about five or six car lengths from the abutment when the plaintiff cut in front in him, and that he was four, five or six car lengths behind the plaintiff's wagon when the plaintiff hit the abutment. His estimate was that four, five or six car lengths was 20 to 30 feet. He testified that his vehicle never came into contact with the rear end of the plaintiff's wagon.

Photographs, taken at the scene within a half hour after the collisions and introduced into evidence by the plaintiff, showed that in addition to the extensive damage to the plaintiff's wagon, especially to its right front and side, the middle of the tailgate was punctured and the middle of the rear bumper was crumpled. After the parties had stipulated concerning the extent of the injuries and certain damages, the plaintiff called Marvin Salzenstein to testify as a reconstruction expert. When the defendant's objection to Salzenstein's testifying was sustained, the plaintiff made an offer of proof. According to it if the expert were allowed to testify, he would testify that he had examined photographs of the accident that were already in evidence, and that he had examined the scene and wagons of the same models as those of the plaintiff and the defendant. He would have expressed the opinion that the damage to the rear bumper and tailgate of the plaintiff's vehicle could not have been sustained if the collision between the wagons had occurred as the defendant had testified it did. He would have testified that his opinion was that the rear of the plaintiff's wagon had been damaged prior to the collision with the abutment and that the defendant's wagon could have caused the damage if its right front corner had struck the rear of the plaintiff's

wagon. To explain the fact that the photos showed no damage to the front bumper of the defendant's wagon, the witness would have testified that in order for the defendant's bumper, which was undamaged, to have been damaged, the speed of his wagon would have had to have been five to ten miles per hour in excess of the speed of the plaintiff's wagon at the time of the impact.

After the offer of proof had been placed in the record the court allowed the defendant's motion for a directed verdict on the basis of the rule of *Pedrick v. Peoria and Eastern R.R. Co., 37 Ill.2d 494, 510.* In *Pedrick* directed verdicts are authorized "in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand."

The basic contention of the plaintiff is that the testimony of the accident reconstruction expert was improperly excluded.

The defendant could not have given testimony here because of the provisions of the statute commonly known as the Dead Man's Act (Ill.Rev.Stat. 1965, ch. 51, par. 2), had not the plaintiff called him as a witness under the provisions of section 60 of the Civil Practice Act (Ill.Rev. Stat. 1965, ch. 110, par. 60). The Dead Man's Act specifically provides that a party to an action who may not otherwise testify under the Act may do so when called as a witness by the adverse party. Section 60 provides: "Upon the trial of any case any party thereto or any person for whose immediate benefit the action is prosecuted or defended, or the officers, directors, managing agents or foreman of any party to the action, may be called and examined as if under cross-examination at the instance of any adverse party. The party calling for the examination is not concluded thereby but may rebut the testimony thus given by countertestimony and may impeach the witness by proof of prior inconsistent statements."

As the section gives the right to rebut the testimony

given by the party called, the plaintiff says that the testimony of his expert should have been admitted.

However, any rebuttal must be through admissible evidence. We have said that reconstruction testimony may not be used as a substitute for eyewitness testimony where the latter testimony is available, unless "it is necessary to rely on knowledge and application of principles of science beyond the ken of the average jurors." (*Plank v. Holman, 46 Ill.2d 465, 471.*) Here the eyewitness testimony of the defendant was made "available" by the deliberate choice of the plaintiff in calling him to testify under section 60. That the plaintiff chose to call the defendant as a witness did not eliminate or diminish the standards of admissibility for reconstruction expert evidence. In addition, as the defendant points out, the plaintiff in his answer to interrogatories identified William Link and a Mr. and Mrs. James Carpenter, who were in a fourth vehicle which was not involved in the collision, as eyewitnesses.

The questions for the jurors here did not require a scientific knowledge beyond that of typical jurors. The questions involved the driving actions of the plaintiff and defendant at the time, and here a factual determination of these questions did not necessitate expert evidence to supplement the eyewitness testimony available.

We are not persuaded by the plaintiff's argument that Salzenstein should have been permitted to testify, simply as a witness and not as a reconstruction expert, as to measurements he made of wagons of the same year and model as those of the plaintiff and defendant. It is said that this would have shown that the protruding surfaces of the defendant's front bumper and headlight rim matched in height the damage sustained by the plaintiff's rear bumper and tailgate.

We consider, however, that the evidence of these measurements was offered as a basis for expert testimony to be given by Salzenstein. That this was to be a basis for expert testimony is illustrated by the statement of

plaintiff's counsel to the trial court that "This is something beyond the ken of the jury." We need not consider an additional problem that there is nothing to suggest that the measurements referred to were not common to other vehicles of different makes, models and years of manufacture.

For the reasons given the judgment of the appellate court is affirmed.

*Judgment affirmed.*

MR. JUSTICE DAVIS took no part in the consideration or decision of this case.