JAMES A. PETERSON, Adm'r of the Estate of Maradean Peterson, Deceased, *et al.*, Plaintiffs-Appellants, *v.* LOU BACHRODT CHEVROLET CO., Defendant-Appellee.

Second District   No. 77-14

Opinion filed July 12, 1978.

William J. Howard, of Maynard, Brassfield & Cowan, of Rockford, for appellants.

Robert K. Skolrood and Robert A. Fredrickson, both of Reno, Zahm, Folgate, Skolrood, Lindberg & Powell, of Rockford, for appellee.

Mr. JUSTICE GUILD delivered the opinion of the court:
This is the second appeal in this case. Following the decision of the

supreme court in *Peterson v. Lou Bachrodt Chevrolet Co.* (1975), 61 Ill. 2d 17, 329 N.E.2d 785, this unusual automobile-pedestrian accident case was tried upon the theory that defendant, who had sold the used automobile involved in the accident less than three months before it occurred, was negligent in the inspection, repair and sale of the automobile with defective brakes. Judgment was entered upon the jury verdict in favor of defendant and against both plaintiffs. Plaintiffs appeal.

Plaintiffs contend that the trial court erred in the following respects: (1) allowing the investigating police officer to give his opinion as to the speed of the vehicle; (2) admitting into evidence the investigating police officer's diagram made from measurements which he took at the scene, and also an enlargement of portions of the officer's diagram which was used as the basis for expert testimony; (3) allowing expert testimony as to brakes and speed by a reconstruction witness; and (4) excluding testimony regarding the reasonable value of charitable medical services rendered to the injured plaintiff by the Shriner's Hospital for Crippled Children.

Defendant sold the 1965 Chevrolet in question to Cornelious Spradlin on June 11, 1971. At approximately 4 o'clock in the afternoon of September 3, 1971, John Elder was driving the vehicle north on 20th Street near Rockford. There is a slight hill as 20th Street approaches Samuelson and Samuelson is located at the bottom of that hill. The Elder vehicle was approaching a pickup truck which had apparently stopped at the intersection of 20th Street and Samuelson to make a left turn. At some time prior to reaching that intersection Elder applied the brakes on the vehicle. It swerved into the left-hand lane and back into the right-hand lane but the left rear of the Chevrolet hit the left front of a van being driven south on 20th Street. The Elder vehicle then went out of control and off the road on the right. It collided with an electric pole located on the southeast corner of 20th Street and Samuelson. During this collision the Elder vehicle also struck two children who were walking home from school and happened to be standing near the pole at that time. Maradean Peterson, who was 11 years old, was killed and Mark Peterson, who was 8 years old, received severe injuries resulting in the amputation of his left leg.

The speed and braking maneuvers of the Elder vehicle were vigorously disputed issues at the trial. In the area south of Samuelson the speed limit at the time of the accident was 65 mph but just north of Samuelson the speed limit was reduced to 40 mph. The trial court received the following eyewitness testimony on these issues. John Elder, the driver of the 1965 Chevrolet, testified in his evidence deposition which was read into the record that he was going approximately 35-45 mph before the accident and that he never exceeded 45 mph. He testified that he applied his brakes

as he came over the crest of the hill, they didn't seem to work and he applied them harder just before going into the left lane. Bobby Spradlin, a passenger in the vehicle, testified that Elder was driving at 45-50 mph before the accident and testified that he told Elder to slow down shortly before the accident occurred. His testimony concerning braking was similar to that of Elder. Kristina Ramsey Spradlin, who was also a passenger in the car, testified that Elder was driving at 40-50 mph. She stated that Elder applied the brakes approximately 150 feet from the stopped pickup truck at the intersection and that was when they entered the lefthand lane. Portions of the testimony of all three of these witnesses was impeached by prior inconsistent statements. The driver of the van which the Elder vehicle hit could not say how fast the Elder vehicle was going or if its brakes were applied before it hit him. Mark Peterson, the injured plaintiff, also could not say how fast the automobile was going but did not think that it was being driven at a high rate of speed. Marvin Beard, who claimed that the Elder vehicle passed him shortly before the accident, testified that the vehicle was doing over 65 mph when it passed him but claimed never to have seen any brakelights on the car.

The court also received the following testimony on speed from noneyewitnesses. In response to a question by plaintiff, Charles Brackett, the wrecker operator who was called to remove the Elder vehicle from the scene, testified that in his opinion the car was doing approximately 25 mph at the time it hit the pole. Officer Gary Maitland of the Winnebago County sheriff's department arrived to investigate the accident shortly after it occurred. He talked to various people and made a number of measurements of skid marks and distances between various points and reduced these measurements to a diagram. In response to a question from defendant, the officer testified that based upon the skid marks he found and the conditions at the scene, he estimated that the Elder vehicle's speed before the accident was approximately 75-80 mph. Dr. Kenneth Packer testified as an expert witness with regard to the brakes on the 1965 Chevrolet. He was also allowed, based upon his examination of Officer Maitland's diagram and various photographs of the scene of the accident, to give his opinion as to the speed of the Elder vehicle at various points. He testified that before the accident occurred the vehicle was travelling at 73 mph, that it was travelling at 38 mph when it left the road, and that it was still travelling at 23 mph at the time it hit the pole. Dr. Packer's observations and estimates of speed were also written on a large diagram which was exhibited to the jury during his testimony.

Plaintiffs' contention on this appeal is that both Officer Maitland's and Dr. Packer's testimony was inadmissible reconstruction testimony. Defendant takes the position that it was not inadmissible reconstruction expert testimony and that, at any rate, plaintiff invited such testimony by

the wrecker operator's testimony on speed. Defendant further argues that even if the testimony were improperly received, it was harmless error and merely cumulative of other properly received testimony concerning speed.

The area of reconstruction expert testimony has been discussed numerous times by the courts of this State and the parties herein have respectively cited many of the cases which they deem most favorable to their position. One of the most recent opinions of the supreme court on reconstruction experts is found in *McGrath v. Rohde* (1972), 53 Ill. 2d 56, 289 N.E.2d 619. In that case the court reaffirmed their earlier holding in *Plank v. Holman* (1970), 46 Ill. 2d 465, 470-71, 264 N.E.2d 12, 15, which stated:

> "However, reconstruction testimony may not be used as a substitute for eyewitness testimony where such is available. Whether it may be used in addition to eyewitness testimony is determined by whether it is necessary to rely on knowledge and application of principles of science beyond the ken of the average juror."

■□■ There appears to have been a certain amount of confusion in the cases as to why reconstruction testimony is normally not properly received in cases involving eyewitnesses. Some cases seem to imply that the mere fact that there are eyewitnesses demands exclusion of all reconstruction testimony. Other cases tend to rely more heavily upon the fact that the issues in the case do not require application of principles of science beyond the ken of the average juror. It is our conclusion that the latter reason is the proper basis for exclusion of reconstruction testimony. Most cases which we have examined involve specific factual issues such as speed or point of impact which are readily determinable by the jury from the testimony and evidence without any special knowledge of physics, engineering or other sciences. We perceive that to be the situation herein. There was no dispute as to the path taken by the Elder vehicle or the fact that its left rear panel hit the van and the front of the Elder vehicle hit the children and the pole. The only issues in this regard were the speed of the vehicle and the point at which the brakes were applied. We find nothing herein which indicates that the jury would have difficulty making decisions upon these issues without expert testimony. For that reason we believe that the trial court should properly have excluded the testimony of both Officer Maitland and Dr. Packer concerning the speed of the Elder vehicle.

It does not necessarily follow, however, that such testimony is automatically reversible error just because it was received. (*Diederich v. Walters* (1976), 65 Ill. 2d 95, 357 N.E.2d 1128; *Dobkowski v. Lowe's Inc.* (1974), 20 Ill. App. 3d 275, 314 N.E.2d 623.) We must determine whether

such testimony was prejudicial to plaintiffs. In this regard defendant has pointed out that plaintiffs elicited the first noneyewitness testimony concerning the speed of the Elder vehicle. This was elicited from Charles Brackett, the wrecker operator. His opinion, based upon his 12 years of experience as a wrecker operator and his observation of the damage to the vehicle, was that its speed at the time it hit the pole was 25 mph. The court overruled an objection to that testimony and received it apparently partly to satisfy its own curiosity. Later, when defense counsel was in the process of eliciting Officer Maitland's opinion as to speed of the vehicle, the court commented that if Mr. Brackett were qualified to give his opinion the officer was likewise qualified to do so. We have serious reservations as to the court's conclusion in this regard. It is to be noted that Brackett and Maitland testified to speed at two different locations and that, inasmuch as the location chosen by Maitland was farther removed from the ultimate point of impact than that of Brackett, it would necessarily be more difficult to determine and there would be more factors which might enter into that determination. Yet Maitland had considerably less experience than Brackett. In addition, Maitland admitted that he had no special training to help him make such determinations and candidly admitted that he had no particular knowledge of a number of factors which would enter into the very calculation which he was attempting to make. Nevertheless, plaintiffs never objected to the officer's qualifications and made no motion to strike the officer's testimony. In view of these facts, and the fact that it was plaintiff who first introduced evidence from a noneyewitness concerning speed, we do not believe that plaintiffs can legitimately claim prejudice because the defense also offered the testimony of one noneyewitness as to speed of the Elder vehicle. We believe that Officer Maitland's testimony, considered alone, constituted harmless error.

We have reached a similar conclusion with regard to Officer Maitland's diagram, defense exhibit #3. The trial court initially admitted this diagram following the officer's testimony, but noted at the time that there were a number of things on the diagram about which the officer did not specifically testify. It is also apparent from the testimony and other exhibits that the diagram did not purport to include all skid marks found by the officer at the scene of the accident but only those which he interpreted as having been made by the Elder vehicle. Dr. Packer testified, utilizing defendant's exhibit #5, which was a larger diagram containing some of the information from defendant's exhibit #3. Immediately after the testimony of Dr. Packer the court decided to deny admission of defendant's exhibit #3 and admit defendant's exhibit #5 solely for the purpose of illustrating testimony or making argument to the jury but not giving the exhibit to the jury during deliberation.

■■■ Initially we note that the fact that the diagram in question was annexed to a police report does not bar admission when the diagram is separated therefrom and only the diagram is admitted. (*Walls v. Jul* (1969), 118 Ill. App. 2d 242, 254 N.E.2d 173.) However, we have closely examined defendant's exhibit #3 and in this particular case we believe that the diagram is confusing, difficult to understand and would not in any way be helpful to the jury in deciding this case. It should not have been admitted into evidence. Nevertheless, it is also clear from the record herein that the jury never saw defendant's exhibit #3. It was admitted into evidence immediately before Dr. Packer's testimony with the condition that it was not to be given to the jury. Following Dr. Packer's testimony defendant's exhibit #3 was excluded at the time that defendant's exhibit #5 was admitted. We therefore deem the somewhat limited admission of defendant's exhibit #3 to be harmless error.

We turn now to plaintiffs' arguments with regard to Dr. Kenneth Packer's testimony. Essentially plaintiffs make four separate arguments concerning this testimony: (1) that Dr. Packer was not qualified to testify as an expert in the field of automobile brakes; (2) that it was erroneous to allow Dr. Packer to give his opinions as to speed and movement of the Elder vehicle; (3) that allowing Dr. Packer's testimony without hypothetical questions was erroneous, and (4) that allowing the use of defendant's exhibit #5 during Dr. Packer's testimony was erroneous.

■■ We have examined Dr. Packer's qualifications and find that he was indeed qualified to testify as an expert on brakes. He had degrees in chemical, metalurgical and industrial engineering and had done extensive work on various types of braking systems in the 19 years preceding this trial. His past experience did include work with automobile brakes and apparently even work with the brakes of a 1965 Chevrolet automobile. Plaintiff seems to believe that in order to be an expert the witness would have had to have done extensive work specifically with the brakes of a 1965 Chevrolet automobile. We do not agree. Indeed it would appear to us that a witness who had extensive experience with automobile brakes would be qualified even if he had never worked with a single 1965 Chevrolet automobile brake.

Plaintiff also attacks Dr. Packer's qualifications because apparently he did not use the same terminology which would be used by a car mechanic when describing the parts of the braking system and because he apparently did not know the function of some parts in the automobile brakes. In order to be qualified we find no requirement that an engineer must use the same terminology as a mechanic. It seems perfectly reasonable to us that an engineer and a mechanic would use different terminology consistent with their different backgrounds. Likewise, a lack of knowledge of specific components, which apparently have nothing to

do with the braking system itself, does not, in our opinion, render Dr. Packer unqualified to testify as an expert. This is especially so when it would appear that the components in question were simply for the convenience of the manufacturer in assembling the brakes and had nothing whatsoever to do with the functioning of the brake once it was installed in the automobile. At any rate, these alleged deficiencies in Dr. Packer's background were brought to the attention of the jury and they could properly use these matters in determining the weight to be given Dr. Packer's testimony.

We have already held that there was no need for reconstruction expert testimony as to speed of the Elder vehicle. This applies to Dr. Packer's testimony as well as that of Officer Maitland. With regard to the officer, we concluded that his testimony alone would not be reversible error. Unfortunately, we do not believe that to be the case with regard to Dr. Packer's testimony. The mere fact that Dr. Packer was supposedly testifying as an expert might have some tendency to sway the jury more than the same testimony from a lay witness. Likewise, we cannot conclude that Dr. Packer's testimony was merely cumulative of other testimony. With regard to the essential element of speed before the accident herein, the only other persons who gave estimates of speed approaching that of Dr. Packer were Mr. Beard and Officer Maitland. Inasmuch as Officer Maitland's testimony was not technically proper, that leaves only Mr. Beard, who was severely contradicted by several other eyewitnesses. Dr. Packer's detailed testimony was not merely cumulative of Mr. Beard's testimony on speed of the Elder vehicle. This is especially obvious in view of the fact that the jury only heard one witness properly testify to a high rate of speed whereas they heard two witnesses improperly so testify.

Defendant also suggests that Dr. Packer's testimony was similar to that which was received in *Finfrock v. Eaton Asphalt Co., Inc.* (1976), 41 Ill. App. 3d 1020, 355 N.E.2d 214. We find no similarities whatsoever between the testimony received herein and that received in *Finfrock*. In that case a university professor gave information concerning the various minimum and maximum braking distances related to various rates of speed. He explained the formula he used and the variables which go into making such determinations. In addition, his answers were given in response to hypothetical questions. That was clearly not the case herein. Dr. Packer's testimony was aimed specifically at this accident, was not given in response to hypothetical questions and had nothing whatsoever to do with braking distances in general. In addition, Dr. Packer did not explain the formula involved other than stating that there were a number of commonly used formulas and did not explain the numerous variables which obviously went into his opinion of speed. While defendant

correctly states that a number of the assumptions of Dr. Packer were contained on defendant's exhibit #5, it is also apparent that a number of other assumptions were not. Specifically, in his testimony he referred to "assuming a conservative estimate of coefficient of friction" for one portion of the path which the vehicle travelled before it came to rest. We are unsure what other assumptions Dr. Packer made from the testimony given. It is apparent to us, however, that he either must have made assumptions concerning, or disregarded, numerous factors such as the weight of the vehicle involved, the slope of the hill down which the vehicle was travelling, and the condition of the tires, to name just a few. We find this situation clearly distinguishable from that involved in *Finfrock.*

Inasmuch as Dr. Packer's testimony with regard to speed was not properly received by the trial court, it likewise follows that defendant's exhibit #5, which was used solely for the purpose of illustrating Dr. Packer's testimony on that issue, was improperly admitted.

■■ We turn now to the issue of whether it was necessary to elicit Dr. Packer's opinions through hypothetical questions or whether he could testify from personal knowledge. Inasmuch as he should not have testified at all with regard to speed of the Elder vehicle, such testimony would have been improper regardless of the form in which it was offered. With regard to Dr. Packer's opinions concerning the brakes upon the automobile, we believe that our opinion in *Murphy v. Hook* (1974), 21 Ill. App. 3d 1006, 316 N.E.2d 146, is dispositive. In that case an expert purported to testify based upon photographs instead of via a hypothetical question. We noted therein that proper trial technique would have demanded the use of hypothetical questions but held that the judge did not abuse his discretion by allowing testimony based upon examination of photographs. In our case the testimony is based upon the examination of photographs, Officer Maitland's diagram, and one piece of the left front brake mechanism. We can see no essential difference between this testimony and that offered in *Murphy v. Hook.* Inasmuch as the case must be retried due to Dr. Packer's improper testimony about speed, we strongly suggest that the parties use proper trial technique during the next trial, if Dr. Packer is called to testify concerning brakes.

■■ The final issue raised by plaintiff in this case is whether evidence of the reasonable value of medical services rendered by a charitable institution may be considered as an element of damages to plaintiffs. This is a question of first impression in this State. It is, however, well established that Illinois recognizes the collateral source rule under which the amount of damages is not decreased by the amount of benefits received by an injured person from a source wholly independent and

collateral of the wrongdoer. Thus, neither private medical insurance payments (*Bireline v. Espenscheid* (1973), 15 Ill. App. 3d 368, 304 N.E.2d 508), nor medical services received at government expense for which the injured person may ultimately have to reimburse the government (*Kendrick v. Standard Oil Co.* (1967), 81 Ill. App. 2d 176, 225 N.E.2d 437) will reduce the amount of damages. It is also improper for a defendant to pursue a line of questioning designed to suggest that the plaintiff could receive any necessary future care at free governmental or charitable facilities. (*Phelan v. Santelli* (1975), 30 Ill. App. 3d 657, 334 N.E.2d 391.) It further appears that the general rule throughout the United States is that an injured party who received gratuitous medical or nursing services is not precluded from recovering the value of these services from the tortfeasor. 22 Am. Jur. 2d *Damages* §207, at 288 (1965); Annot., 77 A.L.R.3d 366, §2(a) (1977).

■■ On this appeal the parties take opposite positions as to who will receive a "windfall" depending upon whether such evidence is admitted. Plaintiffs argue that defendant receives a windfall if the value of such services is excluded in computing damages whereas defendant argues that plaintiffs will receive a windfall by receiving compensation for expenses which were actually paid by others. We do not perceive the question before us as properly being who should receive a "windfall." We view the question as being whether or not the defendant, who is held liable for plaintiff's injuries, should have to compensate plaintiff for the full value of all services necessitated by defendant's wrongful act or whether the particular facts of the individual case should govern whether or not the defendant incurs liability. We view the sounder rule as being one which applies liability uniformly to all defendants, regardless of who pays the plaintiff's medical and hospital bills. It has long been the rule that the general family and financial situation of a party is totally irrelevant in the normal personal injury lawsuit. (*City of Chicago v. O'Brennan* (1872), 65 Ill. 160.) Eligibility for treatment at charitable facilities is often tied to this financial situation which is irrelevant. We therefore hold that the reasonable value of medical services rendered by the charitable institution (Shriner's Hospital for Crippled Children) should be admissible as part of plaintiffs' damage claim at a subsequent trial of this case.

We find nothing in *Jones & Adams Co. v. George* (1907), 227 Ill. 64, 81 N.E. 4, directly contrary to our holding herein. It is obvious to us that the world has changed greatly since that case was decided in 1907. Inasmuch as the opinion did not seek to establish a general rule to be applied in all cases, and apparently has never been applied as such by our courts, we view it as a rule merely limited to the facts therein, to-wit: that an injured

party cannot recover for the value of gratuitous nursing services furnished to him by his family. We view that situation as being clearly distinct from a well-known charitable institution such as the Shriner's, which obviously rendered substantial services involving a complicated skin graft operation, to the injured plaintiff herein.

For the reasons previously stated, the judgment of the trial court is reversed and the case remanded for further proceedings consistent with this opinion.

Reversed and remanded.

BOYLE and WOODWARD, JJ., concur.