(No. 51150.—)

JAMES A. PETERSON *et al.*, Appellees, v. LOU BACH-
RODT CHEVROLET COMPANY, Appellant.

*Opinion filed June 26, 1979.*

GOLDENHERSH, C.J., and MORAN, J., concurring in part and dissenting in part.

Reno, Zahm, Folgate, Skolrood, Lindberg & Powell, of Rockford (Robert K. Skolrood, Robert A. Fredrickson & Jack D. Ward, of counsel), for appellant.

356

Brassfield, Cowan & Howard, of Rockford (Eugene E. Brassfield and William J. Howard, of counsel), for appellees.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

In our previous decision in this case, the court ruled that plaintiff could not recover damages from defendant, an automobile dealer, on a strict liability theory. (*Peterson v. Lou Bachrodt Chevrolet Co.* (1975), 61 Ill. 2d 17.) Plaintiff's daughter was killed and his son was seriously injured in an accident allegedly caused by a defective braking system in a used car sold by defendant to a third party. Plaintiff returned to the circuit court of Winnebago County wherein he filed an amended complaint, alleging negligence on the part of defendant. The action proceeded to trial on a negligence theory, a jury returned a verdict in favor of defendant and against plaintiff, and the court entered judgment thereon. On appeal by plaintiff to the appellate court, the circuit court's judgment was reversed and a new trial was ordered because of evidentiary errors. (61 Ill. App. 3d 898.) We have allowed defendant's petition for leave to appeal.

On June 11, 1971, defendant sold a used 1965 Chevrolet to Cornelius Spradlin. Approximately three months later, on September 3, 1971, John Elder, a friend of Spradlin's son, was driving the vehicle north on 20th Street near Rockford when he encountered a slight crest in the terrain as he approached Samuelson Road. Spradlin's son, Bobby, was in the passenger seat, as was Kristina Ramsey, Bobby's future wife. As he cleared the crest, Elder noticed that a pickup truck had stopped in front of him at the intersection of 20th and Samuelson to execute a left turn. Elder applied the brakes, and the car crossed the center line, striking an oncoming van. The car then veered to the right and eventually left the pavement,

approximately 75 feet beyond the point of collision. The car struck an electrical pole on the southeast corner of 20th and Samuelson and came to rest in the middle of the intersection. Maradean Peterson, 11, and her brother, Mark, 8, were standing near the pole and were struck by the vehicle. Maradean was killed, and Mark suffered serious injuries. His left leg was later amputated. The father of the children, James, filed suit on their behalf. Following our decision in the previous appeal in this cause, plaintiff sought to establish liability of defendant on a negligence theory.

Although the main issues for the jury were whether defendant sold the automobile with defective brakes and, if so, whether defendant was negligent in so doing, evidence was also received from both parties on the question of the speed of the vehicle. This evidence would assist the jury in determining whether a causal connection existed between defendant's negligence, if any, and the death of Maradean and the injuries of Mark.

John Elder, driver of the vehicle, stated in an evidence deposition which was read into the record as part of plaintiff's evidence that he was driving at approximately 35 to 45 miles per hour before applying the brakes. The two passengers in the automobile, Bobby and Kristina, were also called upon by plaintiff to relate their opinion of the speed of the vehicle. Bobby said that it was moving at approximately 45 to 50 miles per hour, and Kristina gave an estimate of 40 to 50 miles per hour.

Also called to the stand by plaintiff was Charles K. Brackett, a tow-truck operator who removed the vehicle from the scene of the accident. He testified that, in his opinion, the vehicle was moving at approximately 25 miles per hour when it struck the electrical pole on the southeast corner of 20th and Samuelson. Brackett, with 12 years experience as a tow-truck operator, based his opinion on an examination of damage to the vehicle. Unlike the

occupants of the vehicle, Brackett did not personally witness the occurrence. Defendant's attorney objected to the questioning of Brackett on the issue of speed, but the objection was overruled, the court saying, "I would like to hear the answer."

Defendant also produced witnesses who testified as to the speed of the vehicle, some of whom personally witnessed the occurrence and some of whom, like Brackett, did not. Marvin Beard was driving an automobile in the same direction as Elder, and he testified that the Elder vehicle passed him about 500 feet from the intersection of 20th and Samuelson at 65 miles per hour or more. Beard also stated that he did not see the brake lights on the Elder vehicle go on. Because of the crest in the terrain, Beard did not see the accident.

Noneyewitness testimony introduced by defendant was provided by Officer Gary Maitland and Kenneth Packer. Maitland arrived at the scene shortly after the accident and made a diagram of skid marks and various reference points. At trial, he estimated that the vehicle was moving at 75 to 80 miles per hour, basing his opinion on the path of the vehicle, the length of its skid marks, and the damage sustained. His diagram of the accident scene was admitted into evidence for the purpose of illustrating testimony and argument, but it was not to be taken into the jury room. The diagram was later withdrawn, and an enlarged, more carefully drawn substitute was admitted in its stead with similar restrictions on its use. This substitute was prepared by an employee of Packer and was based on his examination of photographic exhibits as well as Officer Maitland's diagram. Packer holds multiple academic degrees, including a doctorate in industrial engineering, and he had worked extensively on various types of braking systems. In his testimony, he estimated that the vehicle was moving in excess of 73 miles per hour while approaching the accident scene, in excess of 38 miles per

hour at the point at which it left the pavement, and in excess of 23 miles per hour when it hit the pole.

As is apparent from our recitation of the evidence admitted on the issue of speed, a substantial portion was noneyewitness, reconstruction testimony. Because of a preference for eyewitness testimony, prior holdings have placed restrictions on the admissibility of reconstruction testimony. In *Plank v. Holman* (1970), 46 Ill. 2d 465, 471, the court held that reconstruction testimony "may be used in addition to eyewitness testimony" if it is determined that "it is necessary to rely on knowledge and application of principles of science beyond the ken of the average juror." Two years later, in *McGrath v. Rohde* (1972), 53 Ill. 2d 56, 61, the court again held that it is not proper to supplement eyewitness testimony with reconstruction testimony if the factual matters to be resolved do "not require a scientific knowledge beyond that of typical jurors."

Because we believe that the speed of an automobile is not a matter beyond the ken of the average juror (*Delaney v. Badame* (1971), 49 Ill. 2d 168, 178), we hold that the circuit court erred in admitting reconstruction testimony. The jurors could draw their own conclusions on the basis of eyewitness testimony.

We do not agree, as defendant argues, that the admission of the reconstruction testimony was harmless error. As defendant points out, the estimates of speed given by reconstruction witnesses were consistent with those given by some of the eyewitnesses. These reconstruction estimates, however, contradicted the testimony of other eyewitnesses, and we cannot safely say that the jury was not influenced by the inadmissible reconstruction testimony. In this respect, the case differs materially from *Diederich v. Walters* (1976), 65 Ill. 2d 95, 104-05, cited by defendant, wherein the court held that the erroneous admission of reconstruction testimony was harmless. The

factual matters to be resolved here were closely contested, and the determination of these questions would depend largely on the jurors' view of the credibility of witnesses and the weight to be assigned to their testimony. The inadmissible evidence may well have been determinative, and a new trial is therefore necessary. We note that our disapproval of the reconstruction testimony admitted in this case also extends to that of plaintiff's witness, Brackett.

Also raised by the parties is the issue of whether Maitland's diagram and the enlargement prepared by Packer's employee are admissible. Because these diagrams might again be offered for some purpose other than illustrating reconstruction testimony, we address this issue, and we agree with the appellate court that the diagram prepared by Maitland "is confusing, difficult to understand and would not in any way be helpful to the jury in deciding this case" (61 Ill. App. 3d 898, 904). We therefore find no abuse of discretion on the part of the circuit court in withdrawing the diagram. We also find that the diagram is misleading and inadmissible for this further reason. A comparison of the diagram with photographic exhibits reveals that Maitland failed to diagram four parallel skid marks that were apparently caused by another vehicle, probably a semitrailer or other truck with four parallel tires. In fact, it appears that Maitland may have attributed at least one of these marks to the Elder vehicle, thereby improperly lengthening the marks allegedly left by that vehicle. Defendant cites *Smith v. Ohio Oil Co.* (1956), 10 Ill. App. 2d 67, for the proposition that the only limitation on the admissibility of demonstrative evidence such as the diagram of Maitland is that it be relevant and explanatory. We note, however, that the exhibit involved in *Smith* was found to be "relevant, *legitimate* and helpful" (emphasis added) (10 Ill. App. 2d 67, 77) and that the appellate court there indicated that misleading

exhibits should not be admitted (10 Ill. App. 2d 67, 76). We therefore hold that the diagram should not have been admitted because it was misleading. Because Packer's diagram was based in part on Maitland's diagram, it too is inadmissible.

In addition to his reconstruction testimony, Packer also gave his opinion on whether the braking system on the Elder vehicle was defective. Plaintiff challenges Packer's qualifications to testify as an expert on this subject, but we agree with the appellate court that Packer was so qualified. Among his academic degrees, Packer held a doctorate in industrial engineering. He also had approximately 19 years experience in working with braking systems, including those of automobiles.

Although his brief is not entirely clear on this point, it appears to be plaintiff's contention that, if Packer is allowed to testify as an expert on the subject of braking systems, he must do so in response to hypothetical questions rather than upon his examination of the exhibits. With this we do not agree. In a hypothetical question a witness is asked to assume certain facts to be true. (*Clifford-Jacobs Forging Co. v. Industrial Com.* (1960), 19 Ill. 2d 236, 243.) Such questions are not necessary if the expert witness may personally observe the subject of his testimony (*Borowski v. Von Solbrig* (1973), 14 Ill. App. 3d 672, 687, *aff'd* (1975), 60 Ill. 2d 418), and we believe that the exhibits sufficiently represent the condition of the braking system to support Packer's testimony without the use of hypothetical questions. The exhibits in question are one of two brake shoes from the left front braking system on the Elder automobile and two photographs of that system. Packer testified that, in his opinion, markings on the braking system, as photographed, indicated that all parts were in place when the vehicle was last operated. He also stated that the brake shoe showed no sign of unusual wear. Under these circumstances, a

hypothetical question was not necessary. If, upon remand, Packer is again called upon to express his opinion on the subject of the braking system, he may give that opinion on the basis of his examination of the exhibits.

The final issue raised by the parties is whether plaintiff may recover the value of free medical services rendered by the Shriners' Hospital for Crippled Children in performing surgery on Mark Peterson's leg. Contrary to plaintiff's argument, we believe that the holding of *Jones & Adams Co. v. George* (1907), 227 Ill. 64, 69, is still good law and is controlling. In the *George* case, the court held that a personal injury plaintiff could not recover for the value of nursing services rendered by the plaintiff's family. The reasoning of the decision is sound and, we believe, fully applicable here. An individual is not entitled to recover for the value of services that he has obtained without expense, obligation, or liability. (Accord, *Coyne v. Campbell* (1962), 11 N.Y.2d 372, 183 N.E.2d 891, 230 N.Y.S.2d 1.) We see no need to abandon precedent, as we perceive no erosion of the principle upon which the *George* case is based; the policy behind the collateral-source rule simply is not applicable if the plaintiff has incurred no expense, obligation, or liability in obtaining the services for which he seeks compensation. This is further made apparent upon comparison of the present case with a situation in which the collateral-source rule is frequently applied, that of the defendant who seeks a reduction in damages because the plaintiff has received insurance benefits. "It is a well-settled rule of damages that the amount recoverable for tortious personal injuries is not decreased by the fact that the injured party has been wholly or partly indemnified for the loss by proceeds from accident insurance where the tortfeasor did not contribute to the payment of the premiums of such insurance. This rule is usually justified on the basis that the wrongdoer should not benefit from *the expenditures made by the*

*injured party* in procuring the insurance coverage." (Emphasis added.) (22 Am. Jur. 2d *Damages* sec. 210, at 293-94 (1965).) In a situation in which the injured party incurs no expense, obligation, or liability, we see no justification for applying the rule. We refuse to join those courts which, without consideration of the facts of each case, blindly adhere to "the collateral source rule, permitting the plaintiff to exceed compensatory limits in the interest of insuring an impact upon the defendant." (Note, *Unreason in the Law of Damages: The Collateral Source Rule,* 77 Harv. L. Rev. 741, 742 (1964) (hereafter *Unreason*).) The purpose of compensatory tort damages is to compensate (Restatement (Second) of Torts sec. 903, comment *a* (1979)); it is not the purpose of such damages to punish defendants or bestow a windfall upon plaintiffs. The view that a windfall, if any is to be enjoyed, should go to the plaintiff (*Grayson v. Williams* (10th Cir. 1958), 256 F.2d 61, 65) borders too closely on approval of unwarranted punitive damages, and it is a view not espoused by our cases.

The argument has also been made that one who renders services gratuitously intends to bestow a gift, and that allowing a defendant to mitigate damages in this situation effectively shifts the benefit to the defendant. We do not believe, however, that presumed intentions should play so important a role in our analysis. We are concerned more with discerning the actual effect upon the parties, and we believe that justice is better served in this way. "[T]o permit mitigation does not deprive the plaintiff of all benefit, since he did have the services when he needed them and without cost. Awarding him the monetary value of the services in a judgment probably rendered several years later seems an unanticipated windfall." *Unreason,* 77 Harv. L. Rev. 741, 752.

The judgment of the appellate court is affirmed, and the cause is remanded to the circuit court of Winnebago

County for further proceedings not inconsistent with the views expressed herein.

*Affirmed and remanded.*

MR. CHIEF JUSTICE GOLDENHERSH, concurring in part and dissenting in part:

I dissent from that portion of the opinion which holds that evidence of reasonable value of the services rendered plaintiff by the Shriners' Hospital for Crippled Children is inadmissible. I agree with the well-reasoned holding of the appellate court that the evidence was admissible and the reasonable value of the services recoverable.

The infirmity of the majority's position is demonstrated by the fact that application of its rationale to an action involving a claim for the destruction of an automobile which the owner had received as a gift would result in the holding that because it had cost him nothing there could be no recovery for its destruction. I am certain that the contributors who made it possible for the Shriners' Hospital, without compensation, to render the type of medical services which plaintiff received, intended that the plaintiff, and not the tortfeasor, be the beneficiary of their largess.

MR. JUSTICE MORAN joins in this partial concurrence and partial dissent.