THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
DAVID OLBROT *et al.*, Defendants-Appellants.

First District (1st Division)    Nos. 79-1879, 79-2231 cons.

Opinion filed May 3, 1982.—Rehearing denied June 1, 1982.

368

Sherwin H. Zaban, of Chicago, for appellant David Olbrot.

Samuel V. P. Banks and Terrence LeFevour, both of Chicago, for appellant Raymond Burke.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Kevin Sweeney, and James B. Koch, Assistant State's Attorneys, of counsel), for the People.

JUSTICE O'CONNOR delivered the opinion of the court:

Defendants Raymond Burke and David Olbrot were found guilty of attempted murder (Ill. Rev. Stat. 1975, ch. 38, pars. 8—4, 9—1), aggravated battery (Ill. Rev. Stat. 1975, ch. 38, par. 12—4(b)(1)) and attempted

armed robbery (Ill. Rev. Stat. 1975, ch. 38, pars. 8—4, 18—2), after a jury trial in the circuit court of Cook County. Burke was sentenced to 30 to 90 years for attempted murder, 3 to 10 years for aggravated battery and 6 to 20 years for attempted armed robbery; Olbrot, to terms of 50 to 100 years, 3 to 10 years and 6 to 20 years, respectively.

Defendants contend they were deprived of a fair trial because (1) the court improperly denied a motion to suppress identifications derived from a suggestive procedure; (2) the testimony of an out-of-State police officer violated discovery rules; (3) constitutional rights to cross-examination of witnesses were improperly restricted by the court; (4) the court erred in sentencing defendants for both attempted murder and aggravated battery and the sentences were excessive; (5) the prosecutor made improper comments during closing arguments; and (6) they were not proven guilty beyond a reasonable doubt. Other issues raised individually by the defendants include (1) bias exhibited by the trial court requires reversal; (2) there was no hearing on a motion for severance; (3) refusal to submit a diagram to the jury was error; (4) alleged admissions by Olbrot were improperly allowed by the trial court; (5) a continuance should have been granted in order to depose a former assistant State's Attorney previously assigned to the case; and (6) the jury was not properly instructed.

The record shows: During the early morning hours of October 30, 1976, a robbery of the Musket & Henricksen Drug Store, Skokie, Illinois, was attempted. Edward Thun, an off-duty Chicago police officer, was working part-time as a pharmacist at the time. Thun testified that he was approached by a masked man with a gun who ordered him to get away from the cash register. While moving away, Thun grabbed for the gun and struggled with the armed intruder. The mask, of the Halloween variety, fell off during the struggle. Thun was then shot by a second man, who was positioned at the end of the counter. He did not get a chance to see the face of the first gunman.

Lloyd Hannum, an investigator for the Illinois Secretary of State Police, was in the pharmacy to pick up a prescription. He knew Thun casually as one of the workers in the pharmacy. While waiting for the prescription, Hannum noticed two men dressed up for Halloween come into the pharmacy. One man wore a face mask, the other had a plastic bag over his face. He then saw Thun wrestling with the man who wore the mask. Hannum heard gunshots and ran around the prescription counter, behind which he had been standing. He saw Thun on the floor. He observed the masked man running away without his mask. He also saw the second man in a crouched position, holding a gun. As the two assailants fled the pharmacy, Hannum gave chase and fired his own gun at them. He thought one of his shots wounded one of them. The bag

covering the second assailant came off while he was running away and Hannum was able to see his face. Hannum identified him at trial as defendant Olbrot.

The following day, Hannum testified, he went to Area 6 police headquarters of the Chicago Police Department, where he examined the "mug" books. He identified a picture of Olbrot from one book and a picture of Burke from another.

Hannum made two reports. The first was basically a statement in the field report of the investigating Skokie police officer, Adam Maher. This report described the defendants as 5'8" to 5'9" and noted that the mask was ripped off one assailant during the struggle. The second report made by Hannum was to his superiors. It also contained a diagram of the incident, indicating the positions from which he fired his gun. This diagram positioned everything in the pharmacy, including the various counters, cash register and the location of bullet holes caused by the gunfire. It also contained the positions of the people involved in the incident. On cross-examination, Hannum admitted he did not indicate the positions where he saw the assailants in the store. The diagram also did not contain the positions where Hannum identified the assailants after their masks fell off.

Adam Maher testified that he arrived on the scene to find an injured Thun on the floor. He broadcast the description given to him by Hannum that the defendants were 5'8" or 5'9" or smaller. His police report, however, described the assailants only as 5'8" or 5'9". Maher recovered four lead fragments and a rubber mask from the scene.

At the Skokie Police Department Maher observed a green 1974 Pontiac Firebird. The vehicle identification number observed on the dashboard through the windshield was checked with the Secretary of State's Office. The true photostatic copy of the title was read into the record. The car belonged to Olbrot.

Robert Heelan, another Skokie police officer, heard a call over his radio about the shooting at the pharmacy. He proceeded to make a roadblock east of the store at an intersection when he noticed an approaching car. As he walked towards the slowing car, he identified it as a dark green Firebird. He was within four feet of the car when it sped away. He saw one man in the car. The road was lighted by corner street lights, lights from several businesses and the headlights of his car. In court, he identified the man he saw as defendant Burke.

Although Heelan identified Burke before trial from police photographs shown him by Chicago Police Officer Fornelli, he was unable to identify Olbrot. None of the photographs from which identifications were made were produced at trial.

Arthur Von Ahn, a Los Angeles police officer, testified that he had

met Olbrot in November 1976 while working as an undercover officer. He had approached Olbrot to sell a stolen television set in a police-run "fencing" operation. They went to a tavern. While there, Von Ahn testified, Olbrot told him of a drugstore robbery in Illinois and said he had shot a policeman while receiving a bullet wound in the back. In January 1977 Von Ahn arrested Olbrot after learning his identity.

Both defendants maintain that the trial court's denial of the motion to suppress suggestive photographic identification was error. At the hearing on the motion to suppress, Burke's divorced wife, Lois, testified that on the evening of October 30, 1976, she let several police officers into her apartment without a search warrant. These officers had their guns drawn. She said they questioned her in the kitchen. No search of the apartment was conducted. She stated, however, that on a later visit her apartment had been ransacked by the police. She noticed that an address and telephone book were missing and that several pictures had been taken. At no time had she been shown a search warrant.

Skokie Police Officer Donald Hennessy testified that he visited Mrs. Burke's apartment on several occasions and that Mrs. Burke gave him three pictures of her former husband. He did not give her a receipt nor did he mention the pictures in his police report. He also stated he was present when Heelan made a photographic identification of Burke from the mug books. He also showed Heelan a picture of Burke he had received from his visit with Burke's former wife. Hennessy stated Heelan never identified Olbrot.

Chicago Police Officer Fornelli also testified to the identification procedures at the hearing to suppress. He first showed mug books to Hannum, who made positive identifications of both Olbrot and Burke. He then showed the mug book with Burke's photograph to Heelan, who made an identification.

Heelan and Hannum testified to the photographic identifications they made. Thomas Kelly testified he was the Chicago police officer in charge of investigating the robbery of October 30, 1976. He said Chicago police personnel were involved because the victim was a Chicago police officer. Kelly stated he was present in Mrs. Burke's apartment and interviewed her. He stated he was unaware of anything taken from the apartment except several pictures which were given to him by Mrs. Burke.

■■ Burke argues that the photographic identifications made by the two police officers were impermissibly suggestive and there was a substantial likelihood that misidentification occurred. (*Simmons v. United States* (1968), 390 U.S. 377, 19 L. Ed. 2d 1247, 88 S. Ct. 967.) It is also argued that the failure to produce the photographs used in the out-of-court identification procedures should be held against the State. (*People v. Jackson*

(1973), 12 Ill. App. 3d 789, 299 N.E.2d 142.) We disagree with these contentions. In *Jackson,* under similar circumstances it was held that a photographic identification where the photos were not produced was not suggestive. (12 Ill. App. 3d 789, 793.) Although it is poor police procedure not to retain photographs used in a photographic identification, photographs need not be produced to prove or disprove suggestiveness. *People v. Brown* (1972), 52 Ill. 2d 94, 285 N.E.2d 1; *People v. Dallas* (1980), 85 Ill. App. 3d 153, 405 N.E.2d 1202.

Suggestiveness may be demonstrated by testimony from the participants in the photographic identification or by any other evidence relative to the inquiry. (*People v. Dallas*). Officer Hannum identified both defendants while viewing mug books obtained from the Chicago Police Department. Officer Heelan failed in his first viewing of the mug books to identify either defendant. At the same time he also failed to identify a "doctored" photo of defendant Olbrot. After a second viewing of similar mug books, Officer Heelan identified defendant Burke. He also identified a single photograph of Burke wearing a tuxedo. Officer Heelan never identified Olbrot at any time.

■ The record does not reflect that the police directed attention to defendants' photographs or in some manner suggested that they were the ones who committed the crime. Officers Hannum and Heelan separately viewed the mug books and made the identification therefrom. We find, under the circumstances, that the photographic identifications were not suggestive. *People v. Thompson* (1981), 93 Ill. App. 3d 995, 418 N.E.2d 112.

Olbrot argues that he was denied a hearing on his motion for severance. This motion was based on the fact that his defense would include evidence which was part of his co-defendant's motion to suppress and thus there were antagonistic defenses.

■ The mere apprehension that defenses may prove antagonistic, without a showing that such apprehensions are well founded, is an insufficient ground for severance. (*People v. Murphy* (1981), 93 Ill. App. 3d 606, 417 N.E.2d 759; *People v. Moore* (1978), 65 Ill. App. 3d 712, 382 N.E.2d 810, *cert. denied* (1980), 444 U.S. 1043, 62 L. Ed. 2d 729, 100 S. Ct. 729.) The record reflects that the trial court heard arguments before the hearing to suppress and, after reserving a ruling on the matter, again at the end of the hearing. At that time, the trial court found there were no antagonistic defenses. We find that the trial court's refusal to grant a severance was proper and was within the sound exercise of its discretion. *People v. Rogers* (1979), 79 Ill. App. 3d 745, 398 N.E.2d 1058.

Defendants contend the trial court erred in permitting Officer Von Ahn of the Los Angeles Police Department to testify to alleged oral admissions made to him by Olbrot because that testimony was not

disclosed pursuant to a discovery request. In answer to defendants' prior discovery motion, the State had listed Officer Von Ahn as a possible witness. This answer also indicated that any statements by defendants were contained in police reports which had previously been furnished to defendants' counsel. These reports revealed Olbrot told Officer Von Ahn about being involved in a drugstore robbery and shooting in Indiana.

Officer Von Ahn arrived in Chicago after the trial in this cause had commenced. The State then learned that he had additional information which was not contained in the police reports. This information included a statement by Olbrot relating to involvement in a robbery in Illinois. Upon discovering this information, the State informed defense counsel and made Officer Von Ahn available for depositions. Defense counsel took his deposition.

Defendants claim surprise and a lack of adequate time to prepare and investigate the circumstances surrounding Olbrot's statements as testified to by Von Ahn. (73 Ill. 2d R. 412(a)(ii); Ill. Rev. Stat. 1979, ch. 38, par. 114—10(a); *People v. Young* (1978), 59 Ill. App. 3d 254, 375 N.E.2d 442.) The State argues that it was unaware of the additional information possessed by Officer Von Ahn and that the information was revealed immediately upon its discovery.

The legislative purpose behind the discovery provisions is to provide the accused with protection against surprise, unfairness and inadequate preparation. (*People v. O'Connell* (1964), 30 Ill. 2d 603, 198 N.E.2d 834; *People v. Clinton* (1976), 43 Ill. App. 3d 62, 356 N.E.2d 1119.) Compliance with such discovery requests is excused only where the "court is satisfied that the prosecutor was unaware of the existence of such confession prior to trial and that he could not have become aware of such in the exercise of due diligence." Ill. Rev. Stat. 1979, ch. 38, par. 114—10(c); *People v. Shegog* (1976), 37 Ill. App. 3d 615, 346 N.E.2d 208.

■ The trial court was informed that although Von Ahn had stated that he had given the information to a former assistant State's Attorney, that attorney when reached by telephone had claimed a lack of knowledge of the additional information. It is clear from the record that defendants were aware of Officer Von Ahn from the earlier witness list. The record also indicates that defense counsel had knowledge of the general nature of the inculpatory information possessed by Officer Von Ahn. Furthermore, defense counsel deposed Officer Von Ahn the day before he testified and were able to conduct an extensive cross-examination of the witness. Under the circumstances, we feel defendants were not placed at an unfair disadvantage by surprise. *People v. Carbona* (1975), 27 Ill. App. 3d 988, 327 N.E.2d 546, *cert. denied* (1976), 424 U.S. 914, 47 L. Ed. 2d 319, 96 S. Ct. 1114; *People v. Gamble* (1976), 41 Ill. App. 3d 394, 353 N.E.2d 136.

■■ Defendant Olbrot also argues that it was prejudicial error for the

court to allow Officer Von Ahn to testify to his admissions because they were vague as to time and place. An admission is a statement of independent fact which, when taken in connection with other facts, may lead to an inference of guilt of the alleged crime. (*People v. Ellis* (1976), 41 Ill. App. 3d 377, 354 N.E.2d 369.) The credibility of an admission is for the trier of fact and, where there are inconsistencies between several admissions in evidence, the trier of fact may accept all, parts or none of the admissions. (*People v. Gamble; People v. DiGerlando* (1964), 30 Ill. 2d 544, 198 N.E.2d 503.) We conclude there was no error in admitting Von Ahn's testimony.

■■ Defendant Olbrot next argues that a defense request for a continuance to depose the former assistant State's Attorney should have been granted. All motions for continuance are addressed to the discretion of the trial court and are considered in light of the movant's own diligence. (Ill. Rev. Stat. 1979, ch. 38, par. 114—4(e).) This discretion will not be interfered with except in cases of clear abuse. (*People v. Clark* (1956), 9 Ill. 2d 46, 137 N.E.2d 54, *cert. denied* (1957), 352 U.S. 1002, 1 L. Ed. 2d 546, 77 S. Ct. 558.) A defendant challenging the denial of the motion must show that he was prejudiced at trial by its refusal. (*People v. Banks* (1974), 19 Ill. App. 3d 857, 312 N.E.2d 332.) No such showing was made by Olbrot and an examination of the record reveals no abuse of discretion.

Defendant asserts their constitutional right to confront and cross-examine witnesses (U.S. Const., amend. VI) was unfairly limited by the trial court. (*People v. Kellas* (1979), 72 Ill. App. 3d 445, 389 N.E.2d 1382.) Specifically, it is argued that they were not permitted to delve into police investigative procedures during the cross-examination of Officers Hannum and Fornelli. Attempts were also made to show the personal and working relationship of several of the investigative officers and the victim. The State argues that the prohibited impeachment was repetitive, of a harassing nature and defendants were actually allowed to inquire into the procedures used during the investigation.

It is proper on cross-examination to develop all circumstances within the knowledge of a witness which explain, qualify, discredit or destroy his direct testimony, although the circumstances may incidentally constitute new matter which aids the cross-examiner's case. (*People v. Williams* (1977), 66 Ill. 2d 478, 363 N.E.2d 801; Gard, Illinois Evidence Manual R. 22:08, at 439 (2d ed. 1979).) The scope of cross-examination is largely within the discretion of the trial court and his decision will not be overturned unless there has been an abuse of discretion which has prejudiced the defendant. *People v. McElroy* (1980), 81 Ill. App. 3d 1067, 401 N.E.2d 1069.

Here, defense counsel was allowed to question Officer Hannum about the circumstances surrounding his making of several reports and

the omission of some facts from these reports. Officer Fornelli testified to his role in the investigation of the incident. He detailed the procedures used during the photographic identifications made by Officer Hannum and Heelan. Defense counsel was not allowed to read to the jury a Chicago Police Department manual on investigative procedures. However, defendants' attorneys were able to cross-examine Officer Fornelli on the procedures he usually followed for similar photo identifications.

■■ In our view, the trial court did allow cross-examination as to the investigative procedures used in this case. Any discrepancies between those used in this case and the procedures normally followed were heard by the jury. Alleged bias was also allowed to be shown through the witness' relationships with the victim. Questioning was restricted only when it became repetitive and argumentative. Under these circumstances we cannot find the trial court abused its discretion.

Defendant Olbrot further claims that a diagram, concerning which Officer Hannum testified, should have been submitted to the jury. The diagram was a firearms report made by Hannum to be filed with his superiors to explain the circumstances surrounding the firing of his gun. Merely because a diagram is part of a police report does not bar its admission when the diagram is separated therefrom and the diagram only is admitted. (*Peterson v. Lou Bachrodt Chevrolet Co.* (1978), 61 Ill. App. 3d 898, 378 N.E.2d 618; *Walls v. Jul* (1969), 118 Ill. App. 2d 242, 254 N.E.2d 173.) Admission of such a report, containing an officer's physical observation, is within the trial court's discretion for clarification of the testimony. *People v. Watkins* (1981), 98 Ill. App. 3d 889, 424 N.E.2d 701.

■■ Officer Hannum testified at length about his diagram and what was or was not contained in it. Discrepancies and omissions which were elicited were fully argued to the jury. Consequently, the jury had all the evidence on that issue before it. The trial court refused to submit the diagram to the jury because of the extraneous information contained therein which he considered to be hearsay. There was no prejudice to Olbrot and no error by the court.

Defendants next maintain that they were denied a fair trial due to the improper and prejudicial comments of the prosecutor during closing arguments. Alleged improper comments included allusions to defendants not testifying and misrepresentations of the record. In the former instance, the prosecutor stated, "have you heard any evidence that they were not in the drug store." An objection by defense counsel was sustained by the trial court. After examining the record and the context within which it appears, we find *People v. Carroll* (1977), 49 Ill. App. 3d 387, 364 N.E.2d 408, *appeal denied* (1977), 66 Ill. 2d 632, to be controlling. There, the appellate court upheld similar statements which were directed at the defense attorneys. (49 Ill. App. 3d 387, 395.) Also, in *People v. Hopkins* (1972), 52

Ill. 2d 1, 284 N.E.2d 283, the supreme court held that references to uncontradicted evidence were proper in a situation where the testimony was actually uncontradicted.

■■ Defendants must establish that there was a reasonable possibility that the questionable language, in light of all of the evidence, was a material factor in their convictions. (*People v. Shorter* (1978), 59 Ill. App. 3d 468, 375 N.E.2d 513; *People v. Nicholls* (1969), 42 Ill. 2d 91, 245 N.E.2d 771, *cert. denied* (1970), 396 U.S. 1016, 24 L. Ed. 2d 507, 90 S. Ct. 578.) We feel the arguments complained of did not constitute a material factor in the convictions (*People v. Clark* (1972), 52 Ill. 2d 374, 288 N.E.2d 363) or result in a substantial prejudice to defendants. *People v. Nemke* (1970), 46 Ill. 2d 49, 263 N.E.2d 97.

Defendant Burke further argues that comments made by the trial court showed bias against him. The comments claimed to evince bias are isolated events in the course of the trial and are argued by defendant in a vacuum. Although a statement from the bench obliquely referring to defense counsel's religion may have been ill-advised, it did not manifest any hostility to counsel or his client.

Defendants argue they were not proved guilty beyond a reasonable doubt. It is for the trier of fact to determine the credibility of witnesses, the weight to be given their testimony and inferences to be drawn from the evidence. (*People v. Akis* (1976), 63 Ill. 2d 296, 347 N.E.2d 733.) Discrepancies or conflicts in the testimony generally affect only the weight to be given the testimony and the trier of fact is free to accept or reject a witness' testimony. *People v. Tribett* (1981), 98 Ill. App. 3d 663, 424 N.E.2d 688; *People v. Beasley* (1977), 54 Ill. App. 3d 109, 369 N.E.2d 260, *appeal denied* (1977), 65 Ill. 2d 578.

Defendants' arguments center around the credibility of Officer Hannum's identifications and bias involved with the participation of the victim's fellow members of the Chicago Police Department. The jury, as it was entitled to do, determined that the testimony of Officer Hannum, among others, was credible. (*People v. Bradley* (1971), 3 Ill. App. 3d 101, 278 N.E.2d 243.) We have reviewed the record carefully and find that the verdict of the jury is sustained by the evidence beyond a reasonable doubt.

Defendant Burke also contends reversible error occurred when the trial court submitted instructions to the jury on the elements of attempt murder and accountability. It is argued that the instructions given would allow the jury to convict him without finding that he had the specific intent to murder. (Citing *People v. Harris* (1978), 72 Ill. 2d 16, 377 N.E.2d 28; *People v. Trinkle* (1977), 68 Ill. 2d 198, 369 N.E.2d 888.) These cases are not directly applicable to the instructions given here.

■■ The tendered instruction for murder reads:

"A person commits the crime of murder who kills an individual if, in performing the acts which cause the death, he intends to kill that individual; or he knows that such acts will cause death to that individual."

Belief on the part of an actor that certain results would follow his conduct is sufficient to show a specific intent for that result to occur. (*People v. Morano* (1979), 69 Ill. App. 3d 580, 387 N.E.2d 816, *appeal denied* (1979), 79 Ill. 2d 616; *People v. Shields* (1955), 6 Ill. 2d 200, 127 N.E.2d 440.) We have examined the evidence and the instructions and find that the trial court properly instructed the jury on the elements of attempt murder and accountability. See *People v. Morano; People v. Hancock* (1980), 83 Ill. App. 3d 700, 404 N.E.2d 914, *appeal denied* (1980), 81 Ill. 2d 595.

Defendants finally contend they were improperly sentenced for both the convictions of aggravated battery and attempted murder. This argument is based on the premise that aggravated battery is the lesser included offense of attempted murder. *People v. Williams* (1978), 62 Ill. App. 3d 966, 379 N.E.2d 1268; *People v. Peery* (1967), 81 Ill. App. 2d 372, 225 N.E.2d 730.

■■ In the case at bar, separate and distinct acts occurred upon which convictions for both aggravated battery and attempted murder are proper. (See *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273; *People v. Cross* (1980), 84 Ill. App. 3d 868, 406 N.E.2d 66.) During the robbery attempt, Burke, armed with a revolver, began fighting with Thun. Olbrot then appeared and fired a shot, injuring Thun. These acts clearly constituted separate acts, committed during the attempted robbery, for which defendants may be held accountable. Ill. Rev. Stat. 1979, ch. 38, par. 5—2; *People v. Hamilton* (1981), 100 Ill. App. 3d 942, 427 N.E.2d 388.

As to the claim of excessive sentences, the imposition of a sentence is a matter of judicial discretion and, absent any abuse of that discretion by the trial court, a sentence may not be altered upon review. (*People v. Willingham* (1982), 89 Ill. 2d 352, 432 N.E.2d 861; *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.) Defendants have not shown nor do we find that the trial court abused its discretion.

The convictions and sentences are affirmed.

Affirmed.

CAMPBELL, P. J., and McGLOON, J., concur.