(No. 4705— ▮▮▮▮▮▮▮▮▮▮)

JAMES J. HAMMER, Claimant, vs. STATE OF ILLINOIS, Respondent.

*Opinion filed January 14, 1958.*

JOHN F. GNADINGER, Attorney for Claimant.

LATHAM CASTLE, Attorney General; THOMAS CRONIN, Assistant Attorney General, for Respondent.

FEARER, J.

This is a claim for personal injuries sustained by claimant on August 8, 1954, at or about the hour of 11:30 P.M., on State Route No. 52, approximately four miles

southeast of the City of Joliet, Will County, Illinois. The record consists of the following:

1. Complaint.
2. Transcript of evidence.
3. Motion of claimant for an extension of time to February 28, 1957 in which to file brief.
4. Order of the Chief Justice granting the motion of claimant for an extension of time to and including February 28, 1957 in which to file brief.
5. Abstract of evidence.
6. Brief and argument of claimant.
7. Brief and argument of respondent.
8. Proof of service of a copy of the brief and argument of respondent on the office of counsel for claimant.
9. Reply brief of claimant, together with attached proof of service of a copy of same on the office of the Attorney General.
10. Motion of claimant for leave to withdraw request for oral argument.
11. Proof of service of a copy of the motion of claimant on the office of the Attorney Geenral.
12. Order of the Chief Justice granting the motion of claimant for leave to withdraw request for oral argument.
13. Commissioner's Report.

Since respondent did not file an answer, a general traverse of all the allegations of the complaint will be considered.

On the evening in question, claimant, his wife, Lorraine, his daughter, and two other boys were returning from a picnic in Manhattan, Illinois. Mr. Hammer, claimant, was riding in his 1954 Chevrolet Club Coupe, which was being driven by his wife. He was sitting in the rear of said automobile on the right-hand side. The right rear window was approximately one-half way open. The evening was foggy and warm, visibility being about ten to fifteen feet. Just prior to the accident, claimant was smoking, and was not riding with his arm extended from the window; however, he did put his hand out of the window to dispose of the cigarette. In doing so, his hand came in contact with a metal sign with diagonal marks thereon, being black and white in color.

The top portion of the sign was tilted over the paved portion of the highway, and extended approximately 4½ inches from the outside of the pavement. The sign in question was a few feet from a narrow, concrete bridge, which is better indicated by claimant's exhibit No. 6, being a photograph of the sign, bridge, and the highway at the location of the accident.

The record is not clear as to the height of the sign, the distance that the sign was from the concrete bridge, nor as to how far the boy, who was riding in the front seat on the right-hand side, had his elbow extended out the front window. There is some evidence, however, that the base of the sign was two feet from the north edge of the bridge.

The accident happened near a curve in the highway north of the bridge. Claimant's wife heard a thud, and she pulled around the curve, stopping on the shoulder. An examination was made of claimant's right hand, and it was discovered that it was cut across the knuckles between the middle and ring fingers. Eight stitches were necessitated to close the wound.

The only medical evidence produced was the doctor's written report, admitted in evidence by stipulation, which gave a complete history of treatment, including first aid, post-first aid treatment, reading of X-Rays, and various measurements of the hand and forearm. The diagnosis and opinion of the doctor were to the effect that claimant had suffered an injury to the dorsum of his right hand, and that there was a 4 cm. scar over the dorsum of the right hand. The proximal end of the third metacarpal was displaced approximately one-eighth of an inch in its relationship to the wrist bone. Because of this abnormal relationship, there may well be the development of a trau-

matic arthritis within the next few years, but at the present time there is no evidence of any arthritis.

Neither claimant, his wife, nor any of the other occupants of the car returned to the scene of the accident on the evening in question, but took claimant immediately to St. Joseph's Hospital, Joliet, Illinois, for emergency treatment.

At the time, claimant was employed by the Jewel Tea Company, and reported to work the next day, being August 9, 1954. Claimant and his wife returned to the scene of the accident, and examined the sign, which they testified was in the same condition, as previously referred to, and was protruding and extending over the highway about 4½ inches. The height is not mentioned in the record. Both claimant and his wife testified that on the upper lefthand corner of the sign there was a mark, which indicated that something had struck it. The mark referred to was caused by the removal or elimination of dust and dirt, which were present on the rest of the sign.

A brother of claimant took three photographs, claimant's exhibits Nos. 6, 7 and 8, of the scene of the accident. These pictures were taken on August 11, 1954.

A witness, by the name of Mundt, who lived at Manhattan, Illinois, testified that he noticed the sign was bent, but did not report it to anyone. He was indefinite as to the time when he noticed that the sign was in a bent position, and was extending over the highway.

Another witness, by the name of Klimek, who lived at Manhattan, Illinois, testified that the sign was tilted toward the highway, and that he had noticed this for three weeks prior to the accident, but did not report it to anyone.

At the close of claimant's case, respondent offered in evidence the Departmental Report, which merely shows that the jurisdiction of this particular part of the highway was under the Department of Public Works and. Buildings of respondent from the time of its original construction, which was back in 1924 and 1925. It further pointed out that respondent did not have actual notice of the accident or injuries received by claimant until the complaint was filed in this Court.

The State of Illinois is not an insurer of all persons traveling upon its highways. However, it is under a duty and obligation to maintain its highways and signs, which are located along the shoulders, in such a manner so as not to be injurious to the traveling public operating vehicles, or riding in vehicles, with due care and caution for their own safety and the safety of others.

There is evidence by at least two witnesses that, even though the state did not have actual notice of the defective condition of the sign and its extension over the paved portion of the highway, it did have constructive notice, as this condition existed, according to witnesses, for a considerable period of time prior to the time of the accident, and should have been corrected by the maintenance men serving this particular stretch of road in Will County.

There was no evidence offered that any of the witnesses testifying for claimant saw the sign on the night of the accident. However, we believe there is sufficient circumstantial evidence to establish the negligence of respondent in permitting the sign to remain in the position in which it was on the night of the accident, and that it was respondent's negligence, which was the proximate cause of the injuries to claimant. We cannot find any evi-

dence where claimant was guilty of contributory negligence.

Circumstantial evidence is legal evidence. "Where there is no eyewitness, the fact at issue may be proved by circumstantial evidence. Such evidence consists of proof of certain facts and circumstances from which the court may infer other connected facts, which usually and reasonably follow according to the common experience of mankind. The general rule is that all facts are admissible in evidence, which naturally and logically tend to prove or disprove the fact in issue." (Case cited is *Ohio Bldg. Vault Co.* vs. *Indus. Board,* 277 Ill. 96.)

Inasmuch as there is a lack of direct evidence, we believe claimant has established his claim, if not entirely by direct evidence by certain circumstantial evidence, which established the fact that the sign in question did protrude over the highway, and was injurious and dangerous to the traveling public on a foggy night, and that claimant's injuries were sustained when his hand came into contact with the sign, as a result of which he received personal injuries.

We believe claimant has maintained the burden of proving that, even though the state did not have actual notice, it had constructive notice. There was nothing offered by respondent to rebut this presumption.

We do feel it was strange that the accident was not reported to the Division of Highways, Sheriff of Will County, State Police, or anyone else, and that the first notice that respondent had of the claim and injuries received by claimant was when this suit was filed.

It is rather strange that the sign did not come in contact with any part of the automobile, and that claimant's hand was the only object, which came into contact with

the sign. This might, however, establish that the height of the sign would be approximately to the car window from which claimant put his hand in disposing of his cigarette.

The Commissioner found that claimant had lost approximately $214.40 in wages, and had paid $246.15 for medical care and treatment, making a total of $460.55.

The medical report of Dr. Leimbacher indicates that claimant sustained a fracture of the proximal end of the third metacarpal, which was healed in a good position. It further points out that there is an eighth of an inch displacement of the proximal end of the third metacarpal in its relationship to the wrist bone. The last X-Ray, which was taken on March 1, 1955, revealed no evidence of traumatic arthritis at that time, but did show that the proximal end of the metacarpal was still approximately one-eighth of an inch dorsally displaced. The report of the doctor shows that he was of the opinion that, because of the abnormal relationship of the third metacarpal, there will be a development of traumatic arthritis in the wrist within the next few years, but at the present time there was no evidence of any arthritis.

Based on the expenses in the amount of $460.55, and the nature and extent of claimant's injuries, as outlined in Dr. Leimbacher's report, it is the opinion of this Court that claimant should have and receive the sum of $1,960.55.