(No. 5600—Claimant )

THE MERCHANTS NATIONAL BANK OF AURORA, ILLINOIS, as Administrator, etc., Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed October 26, 1973.*

REID, OCHSENSCHLAGER, MURPHY AND HUPP, Attorney for Claimant.

WILLIAM J. SCOTT, Attorney General; SAUL R. WEXLER, Assistant Attorney General, for Respondent.

BURKS, J.

In our opinion filed January 9, 1973, this court held that the State was liable in this multi-count complaint for the wrongful death of 4 decedents whose separate estates are represented by the claimant as administrator. In said opinion we awarded damages to the claimant on its 4 separate causes of action as follows:

1. For the wrongful death of LARRY HAMPTON5,
 age 19 years. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .$25,000
2. For the wrongful death of SANDRA FRANKLIN,
 age 22 years. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25,000
3. For the wrongful death of JAMES D. FRANKLIN,
 age 4 months. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,500
4. For the wrongful death of THERESA FRANKLIN,
 age 18 months. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,500

On October 11, 1973, a rehearing was held by the full court, pursuant to respondent's petition. Said petition was based upon the following points, which respondent believes were overlooked or misapprehended by the court in its opinion of January 9, 1973:

1. Respondent was not negligent since it only had actual notice of the downed stop-sign for two hours prior to the fatal collision.

2. Negligence of the drivers of the vehicles involved in the collision was the proximate cause of the accident.

3. Damages awarded were contrary to the limits of the Court of Claims Act, and respondent received no credit for setoff.

We will discuss the above points raised by the respondent in their numerical order.

[1.] One comment in our prior opinion might indeed be read, out of context, as indicating that we based the State's liability on the length of time the stop sign was down after the State had constructive or actual notice of this dangerous condition, i.e., 25.5 hours of constructive notice and 2 hours of actual notice. Such was not the holding of this court in our prior opinion and we take this opportunity to correct any such inference that might be drawn from a comment which was not

necessary to our holding and cannot be regarded as controlling on the question of liability.

We have based liability in this case primarily on the negligence of State Trooper Winstead as clearly stated in our prior opinion as follows:

"We are impressed with claimant's unanswered argument that certain acts and omissions of State Trooper Winstead constitute negligence by the respondent. We restate a portion of claimant's argument on this point which we believe is particularly applicable in similar situations at intersections where traffic is traveling at a high rate of speed and where any collision is likely to be disastrous.

"Trooper Winstead discovered the sign down at 10:40 o'clock a.m. on the day in question, at least two hours before the accident, then phoned the State Police Headquarters who in turn phoned the Highway Maintenance Department. However, Trooper Winstead then left the scene and did not return until later when notified of the tragic collision. Trooper Winstead could have done two or three things which could have prevented the collision and the resulting deaths of the claimant's decedents. He could have remained at the scene and directed traffic until help came. He could have put up a flare and then gone to a nearby farmhouse for a shovel, or help, and re-erected the stop sign temporarily. He could have even made some attempt to re-erect the stop sign in a temporary manner before he left the scene. There is no testimony in the records whatsoever that Trooper Winstead did, or attempted to do, any of these things. All that Trooper Winstead said was that he did not believe he could have re-erected the stop sign. The claimants submit that he could have made, and successfully completed, an attempt to prop up the sign until further help came. We agree. *The Trooper's failure to do any of these things constitutes negligence.* [Emphasis added.]

In a nutshell, the respondent, after receiving actual knowledge of said dangerous condition, literally walked away from the dangerous condition and thus allowed the hazardous condition to remain, which eventually caused the death of claimants' decedents."

Our view in this matter is consistent with an opinion of the Illinois Appellate Court in a similar case decided December 7, 1972. *Novotny v. Mott and County of Cook, 9 Ill.App.3d 252.* Here, Mott, a Cook County police officer, had arrived at the intersection of 31st Street and Wolf Road 45 minutes before an automobile collision occurred there. Officer Mott noticed that the stop and go lights were not functioning. He testified that, before leaving this intersection on another mission, he put up flares but

could not be sure whether the flares were designed to burn for 10 minutes or for 30 minutes. The court said at page 254:

"Defendants make no serious argument that Officer Mott's action in leaving the intersection unprotected while aware that the traffic lights were not operating was not *prima facie* negligent, or that such negligence was not a proximate cause of plaintiff's injuries."

Similarly, in the case at bar, we think it is significant that respondent had not, prior to its petition for rehearing, made any serious argument denying the prima facie negligence of State Trooper Winstead. The new argument now presented by the respondent is neither timely nor, in view of *Novotny,* persuasive. More importantly, the new argument could not have been overlooked or misapprehended in our prior opinion since it had not been submitted.

In the *Novotny* case, it appears that the county may have had no more than 45 minutes of actual notice that the stop light was not working. Yet the Appellate Court inferentially held that it was prima facia negligence for Officer Mott to leave the intersection unprotected even though he did put up flares. In the case at bar, Trooper Winstead left the intersection totally unprotected after reporting the condition to police headquarters by phone.

In light of *Novotny,* the length of time during which the State had notice of the downed stop sign, actual or constructive, was apparently immaterial under the circumstances in this case. So, too, was the following unnecessary comment in our prior opinion: "twenty-four hours was too long a period for the stop sign to be down at such an intersection, and this fact supports our finding of negligence on the part of the respondent." Our finding of negligence on the actions of Trooper Winstead needed no further support, and the above quoted dicta does not represent the prevailing view of this court.

[2.] Respondent's petition for rehearing presents new arguments on the question of proximate cause which were not contained in its briefs. For the first time it raises the question of the possible contributory negligence of Hugh Spears, driver of claimant's vehicle, and suggests that this may have been an efficient intervening proximate cause. We believe that claimant effectively answered this contention by citing evidence previously considered by Bruce Finne, former Assistant Attorney General who handled this case at the hearing. Suffice to say, Mr. Finne declined to argue that there was any negligence on the part of Hugh Spears.

Prior to the rehearing, respondent had argued only that the proximate cause of the accident was the negligent operation of the car driven by Natalie Biodeau which struck the Spears Car.

Accepting as we did the probability of negligence on the part of the driver of the Bilodeau car, our prior opinion proceeded to analyze the question of proximate cause at great length. Depending as it does on all of the circumstances in any given case, we concluded from a careful study of leading case law that the State's negligence was the proximate cause of the death of claimant's decedents. Respondent reargues the key cases on which the court relied, pointing out some distinguishing features, but fails to cite any case as closely in point on the question of proximate cause as the case of *Johnson* v. *City of East Moline, 338 Ill.App. 220.* Tha principal distinction, pointed out by respondent, between the *Johnston* case and the case at bar was the length of time the stop sign had been down and the actual or constructive notice to the responsible governmental unit. The same distinction was made in all of the new cases respondent cites from foreign jurisdictions. No case cited by the respondent involved the negligence of a traffic

officer in leaving a dangerous intersection unprotected after he had discovered it. This is the fact on which we found the State negligent, as explained in [1] above, and not in the length of notice in the State.

We then relied on the rule in *Johnston* in finding that the State's negligence was the proximate cause, notwithstanding the intervening act of a third party, the driver of the Bilodeau car. Respondent does not dispute the fact that the *Johnston* case clearly and accurately states the rule in Illinois as to what constitutes proximate cause after the first acts of negligence, which contributed to the injuries, have been determined. Our prior opinion correctly stated our conclusion that the State's negligence was the proximate cause in this action.

[3.] The court concedes that, in arriving at the amount of the awards in our prior opinion, we overlooked a letter from counsel for the claimant advising the court that each of the estates of claimant's decedents had "previously received monies under the uninsured motorist provisions of the policy which Hugh Spears, driver of their car, had on the day in question. The amounts for the respective estates are as follows:

1. Larry Hampton . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $7,000.00
2. Sandra Franklin . . . . . . . . . . . . . . . . . . . . . . . . . . . . 500.00
3. James D. Franklin. . . . . . . . . . . . . . . . . . . . . . . . . . 3,000.00
4. Theresa Franklin. . . . . . . . . . . . . . . . . . . . . . . . . . . 3,500.00 "

The above letter dated September 1, 1971, was submitted after all briefs were filed, and the information was not contained in the briefs. After respondent properly called it to our attention, we discovered that the letter had inadvertently been placed at the back of our very voluminous file on this claim. It was, therefore, overlooked in our prior opinion. Hence, the

amounts previously awarded for the wrongful death of the two infants in this case, James and Theresa Franklin, represented the court's considered judgment as to the total mount of pecuniary damages sustained by their only heir at law, an infant sister, Penny Jean Hampton. The amount previously awarded for the death of each of the two adults was the statutory limit which this court could award for wrongful death.

The question of set-off has been timely raised by the respondent, and the amounts previously awarded to the estate of each of claimant's decedents must be reduced by the above stated amounts previously received from other sources. This is mandatory under *§26 of the Court of Claims Act* which reads as follows:

> "The granting of an award under this Act shall constitute full accord and satisfaction. There shall be but one satisfaction of any claim or cause of action and any recovery awarded by the court shall be subject to the right of set-off of an amount equal to the monies received from any other source, whether received in consideration of release or covenant."

The above rule had been followed by this court for many years prior to the enactment of §26, under our interpretation of the intent and meaning of the Court of Claims Act. *Flisk* v. *State, 21 C.C.R. 363 (1952); Anzalone* v. *State, 24 C.C.R. 172 (1961); Williams* v. *State, 25 C.C.R. 249 (1965).*

Accordingly, the amount of the awards previously granted will be corrected by deducting the amounts received under the uninsured motorist provision of insurance carried by Hugh Spears, driver of the car in which the decedents were killed, as follows:

The maximum award of $25,000 for the death of Larry Hampton will be reduced by $7,000, leaving a net award of $18,000.

The maximum award of $25,000 for the death of

Sandra Franklin will be reduced by $500, leaving a net award of $24,500.

Since the estates of James D. Franklin and Theresa Franklin each received an amount from the aforesaid source in excess of ths $2,500 previously awarded by this court in our prior opinion, our prior award for these deaths will be expunged and rescinded by this amended opinion.

In view of the above stated adjustments we are making in the awards, it becomes a moot question as to whether Penny Jean Hampton, as sole heir and beneficiary of 3 of the decedents, had a separate cause of action for the death of each and, therefore, could have received more than $25,000 under the following language of §8(d) of the Court of Claims Act:

". . . provided that an award for damages in a case sounding in tort shall not exceed the sum of $25,000 to or for the benefit of any claimant."

Under this amended opinion, Penny Jean Hampton could receive no more than the amount awarded for the death of her mother, $24,500.

It is hereby ordered that our prior opinion in this cause, filed January 9, 1973, be and the same is hereby modified and revised as stated in this amended opinion which clarifies the basis of liability and changes the amount of the awards.

The prior awards made under counts III and IV of the complaint are hereby rescinded and no award is to be allowed for the deaths of the infants, James and Theresa Franklin.

In lieu of the awards made in our prior opinion, we hereby make the following awards based on counts I and II of the complaint:

(1) To the Merchants National Bank of Aurora, Illinois, as
 Administrator of the Estate of Larry Hampton, deceased,
 for said decedent's wrongful death, the sum of . . . . . . . . . $18,000
(2) To the Merchants National Bank of Aurora, Illinois, as
 Administrator of the Estate of Sandra Franklin, deceased,
 for said decedent's wrongful death, the sum of . . . . . . . . . 24,500