(No. 76-CC-0263—

SIOUX CITY & NEW ORLEANS BARGE LINES, INC., Claimant, *v.* STATE OF ILLINOIS, Respondent.

*Opinion filed September 8, 1978.*

THEODORE C. ROBINSON, Attorney for Claimant.

WILLIAM J. SCOTT, Attorney General; JOHN W. PURNEY, Assistant Attorney General, for Respondent.

HOLDERMAN, J.

Sioux City & New Orleans Barge Lines, Inc. filed a claim against the State of Illinois to recover damages sustained by their towboat, Waverly, when the Ruby Street Bridge in Joliet, owned and operated by Respondent, failed to open.

On the morning of September 8, 1973, the Waverly was proceeding south on the Illinois River, pushing six barges bound for St. Louis. The weather was clear and

there was no appreciable amount of wind or current.

The pilot of the Waverly had been a river boat captain for 17 years. When he was approximately one-quarter mile from the bridge, he slowed the Waverly's engines to dead slow before giving a long blast on the boat's horn, which is the customary and usual signal for requesting the bridge to open.

It was necessary that the bridge be opened because while the barges were low enough to go under the bridge, the Waverly's superstructure, which was a permanent superstructure, was high enough that it would not clear the bridge unless the bridge was open.

The bridgetender responded to the Waverly's blast with the usual signal on a whistle and switched on a green light, which is the normal signal indicating the bridge would open. The pilot was able to see one of the vehicular guardrails with its blinking red lights go down, a further indication that it was safe to proceed.

The Waverly continued downstream and when the boat was approximately 600 feet from the bridge, the pilot realized the bridge was not going to open in time to allow the tow to go through. He put the engines in reverse as hard as he could but the momentum of the boat and loaded barges, a combined weight of about 9,000 tons, kept the flotilla moving ahead.

It was not until the first barge was under the bridge that the bridgetender sounded the danger signal of four or five short whistle blasts and changed the light from green to red.

The testimony of the pilot was uncontradicted and the record shows that after the Waverly had been removed from under the bridge, the bridge was opera-

ble and there appeared to be nothing wrong with the machinery that raised and lowered the bridge.

This case closely parallels the case of *Federal Barge Lines, Inc. v. State of Illinois, 29 Ill. Ct. Cl. 25,* in which an identical set of facts are presented. In that case, the Court quoted the case of *Fabick Tugboat Rental Co., Inc. v. State of Illinois, 21 Ill. Ct. Cl. 360,* in which the Court stated:

"We are of the opinion that failing to raise the bridge when it had ample notice of the approach of the vessel, was a neglect of duty on the part of the Respondent. The State of Illinois, acting by and through its agent, was guilty of negligence, which proximately caused the damages complained of by the Claimant. In the case of *Clement v. Metropolitan West Side El. Ry. Co.,* 123 Fed. 271 (C.C.A. 7th Cir., 1903) which involves facts similar to those in the instant case, the Court said:

"A bridge spinning a navigable river is an obstruction to navigation tolerated because of necessity and convenience to commerce upon land. Such a structure must be so maintained and operated that the navigation may not be impeded more than is absolutely necessary, the right of navigation being paramount. It is incumbent upon the owner that the bridge be so constructed that it may be readily opened to admit the passage of craft, and maintained in suitable condition thereto. It is also his duty to place in charge those who are competent to operate the bridge, to watch for signals, and to open the bridge for the passage of vessels, and for the performance of such delegated duty he is responsible. It is also his duty to equip the bridge with proper lights giving warning of the position of the bridge and of its opening and closing. If for any reason the bridge cannot be opened, proper signals should be given to that effect such as will warn the approaching vessel in time to heave to. A vessel, having given the proper signal to open the bridge and prudently proceeding under slow speed has, in the absence of proper warning, the right to assume that the bridge will be timely opened for passage. She is not bound to heave to until the bridge has been swung or raised and locked, and to critically examine the situation before proceeding *(City of Chicago v. Mullen,* 54 C.C.A. 94, 116 Fed. 292) but may carefully proceed at slow speed upon the assumption that the bridge will open in response to the signal, and may so proceed until such time as it appears by proper warning, or in reasonable view of the situation, that the bridge will not be opened *(Majnistee Lumber Company v. City of Chicago (D.C.), 44 Fed. 87; Central Railroad Company of New Jersey v. Pennsylvania Railroad Company,* 8 C.C.A. 86, 59 Fed. 192), when it becomes the duty of the vessel, if possible, to stop and, if necessary, to go astern."

A similar situation presented to this Court was the case of *J. E. Vickers, et. al. v. State of Illinois, 22 Ill. Ct. Cl. 660.*

Claimant alleges that it sustained repairs in the amount of $14,403.66 and loss of services for the Waverly for a 15 day period while it was being repaired.

The evidence indicates that the Waverly would have been in active service if it had not been damaged and, consequently, claimant suffered damages for the period of time it was idle as a result of said accident. Evidence in the record indicates that to charter a similar vessel for 15 days would cost $60.00 per hour, or $1,400.00 per day. This figure, however, varies with the market demand. Claimant also offered evidence that its losses resulting from the deprivation of the use of the Waverly amounted to $800.00 per day. This figure is somewhat uncertain and the Court believes compensation for loss in the amount of $500.00 per day is fair.

It is the opinion of this Court that Claimant was not guilty of contributory negligence and that the only negligence involved was that of Respondent by its failure to give the red light to the oncoming tow in sufficient time so it could stop. This it failed to do and damages complained of resulted.

Claimant's damages would be as follows:

| Sum expended for repairs | $14,403.66 |
|---|---|
| Loss of use for 15 days $500.00 per day | 7,500.00 |
| Total | $21,903.66 |

An award is hereby granted to Claimant in the sum of $21,903.66.