(No. 81-CC-2348-)

JAMES SALLEE, Individually and as Father and Next Friend of Chris Sallee *et al.*, Minors, and PAM SALLEE, Claimants, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed January 22, 1990.*

JEROME MIRZA & ASSOCIATES, LTD., for Claimants.

NEIL F. HARTIGAN, Attorney General (SUZANNE SCHMITZ, Assistant Attorney General, of counsel), for Respondent.

Montana, C.J.

This claim arose from a traffic accident that occurred early in the morning of June 13, 1980. The vehicle involved was a 1977 Thunderbird, which was in good condition. Claimants, James Sallee and Pam Sallee, were in the front seat while their children, Chris and Amy Sallee, were in the back seat.

The Claimants had left LaHarpe, Illinois, and were traveling on Route 9, an Illinois highway maintained by the Department of Transportation. At the location of the accident, Route 9 is a two-lane road with one lane traveling east and one lane traveling west. The vehicle in which the Claimants were riding skidded across the highway and struck a tree, causing fairly severe injuries to Pam Sallee and less serious injuries to James Sallee and their children.

James Sallee, the driver of the car, lost control of the vehicle as a result of standing water on the roadway.

Numerous cases in this Court have held that the State does not insure the safety of all motorists and passengers who travel on the State's highways. In order to recover on their claim, the Claimants must prove by a preponderance of the evidence that the State was negligent, either in its maintenance of the road or by its failure to maintain the road. The Claimants must further prove that this negligence was a proximate cause of the accident, that the State had notice of the alleged defect which they either failed to maintain or maintained in a negligent manner, and that the accident resulted in damages. Possible contributory negligence on the part of the Claimant must be considered.

In this case, both the question of negligence and proximate cause are in dispute. There seems to be no great dispute about the damages, and the Court finds that there was no contributory negligence on the part of any of the Claimants. Of course, notice is an issue contained within the issue of the State's negligence.

The issue of proximate cause is perhaps the most closely contested issue in this case. The most important evidence as to proximate cause was the testimony of State Trooper Oliver. Trooper Oliver was the first officer on the scene and was the officer who completed the accident report. At oral argument of this matter before the entire Court, the question was raised as to whether or not the report prepared by Trooper Oliver had been placed in evidence. On December 9, 1985, a supplemental memo was filed by the Claimants indicating that this testimony was admitted without objection.

"Q. Trooper, let me direct your attention to the back page of your report, I believe you have a copy in front of you, and on the back page of that report there is a narrative section consisting of about 9 to 10 lines that you have written in concerning the accident.

A. Yes sir.

Q. The second paragraph of that narrative states that there are low spots in the roadway at this particular location and during and after a rain, water collects in these spots creating a traffic hazard.

 Is that what you wrote on that occasion?

A. Yes sir.

Q. And that was your opinion and belief when filling out this report?

A. Yes sir.

Q. Is that your opinion and belief today?

A. Yes."

It appears that no objection was made to the admission of this evidence. The testimony concerned the fact that there were low spots in the roadway at the particular location of the accident. It went on to state that during and after a rain, water collected in those spots, creating a traffic hazard. When asked on the day of the hearing if that was still the trooper's opinion, the trooper reiterated that it was. The trooper further testified that there was still water on the roadway when he arrived at the scene. He estimated that there was approximately one inch of water. The trooper further indicated that there were skid marks beginning where the automobile hit the water. He further testified that the skid marks started east of where the water was, went across the roadway, and off on the north shoulder, struck a tree, and then continued in an easterly direction.

None of the Claimants could positively testify that the standing water on the roadway was the cause of driver Sallee losing control. James Sallee did testify that he was having no problem with the steering immediately prior to the accident. Although the Respondent has raised strong arguments that this testimony is not sufficient to establish that the standing water on the roadway was a proximate cause of the accident, we disagree. We feel that by a preponderance of the evidence, the Claimant has met the burden of proof that

the standing water was the proximate cause of James Sallee losing control of the automobile.

The Respondent has cited the case of *English v. State* (1982), 35 Ill. Ct. Cl. 180. In that case, this Court denied a claim for personal injuries and for death as a result of a factual situation which was similar to the case at hand. The Court denied the claim on the basis of a showing of no proximate cause. That case also involved standing water on the roadway. However, in the *English* case, a head-on collision was involved. At a location where water was present on the roadway, a car driven by Steven Glasgow crossed the center line and collided head-on with a car driven by Claimant Diane English. The driver of the automobile, Steven Glasgow, survived. However, a passenger was killed. The trooper investigating that accident indicated that there was standing water in the roadway; however, another witness testified that there was not. Again, that closely matches some of the testimony in the present case. The only two occurrence witnesses who testified in the *English* case were Claimant English and a passenger in her automobile. The passenger in the Glasgow automobile was dead, and the driver, Steven Glasgow, did not testify. Since it was his car which crossed the center line, the Court found that the Claimants had failed to prove that the standing water in the roadway was the proximate cause of the accident.

Here, the testimony as to the existence of the water standing on the roadway at the time of the accident seems to be more clearly established. In addition, Trooper Oliver's testimony concerning the skid marks, which began at the location of the water and led to the location of the Sallee automobile, is very convincing.

In addition, the Claimant in this case has cited two other prior decisions which go far to persuade the Court

that there is proximate cause. In the case of *National Bank of Bloomington v. State* (1980), 34 Ill. Ct. Cl. 23, the proximate cause was clearly and easily established. The occurrence eyewitness testified that there were 8 to 10 inches of water on the roadway and that he witnessed the decedent's vehicle come into contact with the water, hydroplane, leave the pavement, come out of a ditch, and crash into his truck head on. Of course, those facts more clearly established proximate cause than the facts present in this case. However, in another case cited by the Claimant, *Interstate Bakeries Corp. v. State* (1974), 29 Ill. Ct. Cl. 446, this Court awarded a claim to a corporation seeking to recover property damage as a result of an accident involving a truck. The testimony involved a tractor-trailer which struck an oil slick with rainfall on top of it. The driver testified that after he hit two large bumps in the road and an oil slick, he lost traction and slid into an embankment.

In this case, the driver testified that he lost control after topping a rise. He then slid into an embankment. The testimony as to the existence of the water here was supplied by Trooper Oliver.

For all the reasons stated, we believe the factual situation in this case to be more similar to that of *Interstate Bakeries Corp.* than either the *English* or *National Bank of Bloomington* cases. We therefore feel that our finding of proximate cause in this case is consistent with the prior decision of this Court in the *Interstate Bakeries Corp.* case.

Another difficult issue to resolve in this case, and the one which more often arises in similar cases, is that of negligence. Numerous cases decided by this Court have held that this State is not an insurer as to the safety of motorists or passengers upon its highways. The State is only required to maintain its highways in a reasonably

safe condition. In addition, before the State can be held liable for highways which are not maintained in a reasonably safe condition, the State must have notice of the dangerous condition.

This notice requirement has been defined by this Court in numerous cases to be either actual notice or constructive notice. If the State had notice of water standing on the roadway at this location, the State would have been required to either correct that situation or to place warning signs as to the dangerous condition. The evidence in this case is uncontradicted that no warning signs were placed and that no corrective action was taken on this location prior to the accident. Thus, the ultimate issue which must be resolved in this case as to liability is whether or not the State had actual or constructive notice of a dangerous situation at the location of this accident.

Trooper Oliver, the State trooper who investigated this accident, indicated that he observed standing water in this location on the date of the accident. In addition, he testified that he had seen water in the location in the past. Further, he testified without objection that it was his opinion that there are low spots in the highway at this particular location and that during and after a rain, water collects in these spots creating a traffic hazard. Under cross-examination, Trooper Oliver testified that on the date of the accident, he was not aware that there was a collection of water at that location until he arrived on the scene. Trooper Oliver went on to testify that the area of the roadway that was covered with water consisted of the entire width of the roadway for approximately 10 feet.

The Claimants also called as a witness a Larry Mynatt. Mr. Mynatt lives close to the location of the accident and is familiar with the scene of the accident.

He testified that he had noticed grooves in the road which collected water during a rainfall. He further testified that at any time when it was raining, there was water standing in the road at that location.

The Claimants then called a Kenneth Brown who, at the time of the hearing, was mayor of the city of LaHarpe. He testified that he was also familiar with the scene of the accident, and he had placed flares west of the accident scene the evening before the accident. He had done this to notify traffic that there was standing water on the road. He also testified that he had placed flares at the scene of the accident for the same purpose two weeks prior to the accident; however, he had not notified the Department of Transportation of this condition.

The Respondent then called a Roy Baranzelli, a field engineer for the Department of Transportation. Engineer Baranzelli testified as to the construction of the highway and accident area. He testified that prior to the accident, he had no report, either formally or informally, of water standing on the roadway in that area.

The Respondent also called Byron Winters, who is a maintenance worker for the Department of Transportation in Hancock County. He stated that he had been with the Department for approximately 14 years and was familiar with the site of the accident. He traveled the road three times a week for approximately 14 years. He also indicated that part of his job duties included the assignment of workers to place warning signs for water on the pavement. He testified under direct examination that he had never seen an accumulation of water of sufficient depth to warrant placement of a warning sign at that location.

Under cross-examination, Mr. Winters indicated that he had seen water at the accident site, although not

on the day of the accident. Approximately two to three years previous to the date of the accident, he had seen water accumulate at the accident site. He indicated that at that time, signs had been placed warning of water on the pavement. He further indicated that warning signs regarding water on the roadway were placed only if they were notified that there was a problem. If it was noted that water was a long-standing problem or a frequent problem, such as under a viaduct, temporary signs were placed on a more regular routine.

Notice cases are among the most difficult this Court must decide. In the case of *Interstate Bakeries Corp. v. State*, cited before in this opinion, notice was clearly established. In that case, a direct report of a dangerous condition had been made, and the State had been present on more than one occasion attempting to correct the problem. In the case of *Reidy v. State* (1975), 31 Ill. Ct. Cl. 16, this Court denied liability because the evidence failed to indicate prior knowledge of flooding by State officials. In that case, numerous witnesses called by the Respondent indicated that there had never been any actual notice of water on the roadway on the date of the accident. In addition, there was no prior notice or knowledge of water accumulating at the scene of the accident. This evidence was very strong that the State had no notice, either actual or constructive, of water accumulating at the scene of that accident.

A similar case was *Brockman v. State* (1975), 31 Ill. Ct. Cl. 53. In that case, a State trooper testified that while there was a six-inch accumulation of water on the road at the site of the accident, he had driven over the highway many times and did not recall ever having seen water accumulate on the road prior to the accident. He further testified that he found a clogged drain beside the roadway from which he removed some debris. He

testified that the road then drained in about 40 minutes. Further, witnesses for the State included the highway engineer, who testified that there had been no prior notice of any problems regarding water at the accident site. In addition, testimony established that on the day of the accident, the engineer in charge of that stretch of highway had assigned a two-man crew to clean and repair sewers on the very day of the accident. He testified that the men had covered that stretch of highway on the day of the accident removing debris from sewers.

However, this Court must also consider the case of *National Bank of Bloomington v. State*, previously cited herein. In that case, as in this case, local residents testified that they had observed water accumulating on the roadway numerous times. In this case, two local residents testified that they had noticed the water accumulating, even though they did not report the accumulation to the Department of Transportation. In the *National Bank of Bloomington* case, Trooper Hinkle testified that he had driven over the area numerous times and had seen water standing on the same site on prior occasions. He further testified that in the past, he had signs posted at the site of that accident when he had noticed water standing on the roadway. In the case at bar, Trooper Oliver also testified that he had seen water at the scene of this accident in the past. He testified that there are low spots in the roadway at this particular location and that during and after rain, water collects in these spots, creating a traffic hazard. His, along with the testimony previously referred to in this opinion by Byron Winters, would indicate that the State had some constructive notice of a potential problem regarding water standing on the roadway at this site.

We think that the facts in this case fall somewhere between the facts which were present in the cases of

*Reidy* and *Brockman*, in which this Court denied claims on the basis of no liability, and the case of *National Bank of Bloomington*, in which this Court partially awarded a claim. Although we consider this to be a close question, thorough reading of the evidence presented at the hearing on this matter convinces us that the Claimants have met their burden of proof by a preponderance of the evidence. Therefore, we find liability for the Claimants against the Respondent.

Next, we reach the issue of damages. It appears that the medical bills, which were not specifically delineated for each of the four Claimants, totalled $22,000. On the testimony presented at the hearing of this case, it is probable that the great majority of these medical bills were as a result of the injuries to Claimant Pam Sallee. It appears that the injuries to the two children were relatively minor. There was some scarring. However, the Commissioner who heard this case indicated that it was minor and, in one case, covered by hair. Claimant James Sallee suffered somewhat greater injuries and may have lost approximately $1,500 in wages as a result of the accident. There was no recovery of these lost wages. Claimant Pam Sallee evidently suffered considerable pain and suffering as a result of her injuries. She was required to wear a variety of braces. One brace left permanent scars. There was some testimony that plastic surgery could correct some of the problem, but not all of the problem.

The evidence also clearly established that the medical bills had been paid by the Claimant's health insurance. The Respondent argued to this Court that, if we found liability, we should reduce the damages awarded because of a set-off as set forth in section 26 of the Court of Claims Act:

"The granting of an award under this Act shall constitute full accord and satisfaction. There shall be but one satisfaction of any claim or cause of

action and any recovery awarded by the court shall be subject to the right of set-off." Ill. Rev. Stat., ch. 37, par. 439.24—6.

Section 26 was enacted in 1972 and was amended the year after. Before amendment this section read:

"The granting of an award under this Act shall constitute full accord and satisfaction. There shall be but one satisfaction of any claim or cause of action and any recovery awarded by the court shall be subject to the right of set-off *of an amount equal to the monies received from any other source, whether received in consideration of release or covenant.*"

It is well understood that a common law set-off is a type of counterdemand made by the defendant arising from an independent cause of action held by the defendant. (*Air Illinois, Inc. v. State* (1986), 38 Ill. Ct. Cl. 289.) In *Air Illinois, Inc.,* a claim by the airline for a passenger fare was set off against tickets purchased by another agency but not used, due to bankruptcy of the airline.

The original section 26 created in the context of personal injury a new meaning for the words "set off," namely the reduction of an award by the "amount equal to the monies received from any other source." (*Merchant's National Bank of Aurora v. State* (1972), 29 Ill. Ct. Cl. 103.) In *Merchant's National Bank of Aurora*, the court set off the amount received from the injured's uninsured motorist coverage.

In *Saltiel v. Olsen* (1979), 77 Ill. 2d 23, 394 N.E.2d 1197, the supreme court of Illinois stated:

"° ° ° the normal presumption is that an amendment is intended to change the law as it formerly existed, rather than to reaffirm it ° °( °." (77 Ill. 2d 23, 29, 394 N.E.2d 1197, 1200.)

Based upon this rule of statutory construction, the fact that the language requiring all of the monies received from other sources to be set off was enacted and then quickly repealed leads inescapably to two conclusions. Either not all previously received monies are to be set

off, or the statute was to reflect the common law definition of set off.

The question before us is whether a recovery from the Claimant's own insurance is to be set off.

Though nowhere stated in the Court of Claims Act, this Court applies the common law, precedents, and statutes applicable in the circuit courts, except where conflict exists with the Court of Claims Act.

In the circuit courts, where an injured party receives payments from his own insurer, the collateral source rule is invoked. The collateral source rule holds that monies received from a source independent of the tortfeasor may not be deducted from damages. *Peterson v. Bachrodt Chevrolet Co.* (1978), 61 Ill. App. 3d 898, 378 N.E.2d 618.

The logic behind the collateral source rule is that an injured party has prudently entered into an insurance contract and should be allowed to benefit from it. Additionally, some insurance contracts have subrogation clauses which allow insurers to recover their expenditures from the insured once the tortfeasor has paid the injured party. Failure to apply the collateral source rule allows the wrongdoer to escape the consequences of its wrongdoing, throws the burden on the insured, and rewards those without insurance.

It is our belief that the current section 26 authorizes common law set offs and authorizes deductions of monies previously received by the injured from the State or other tortfeasors, but does not abrogate the collateral source rule.

Therefore, the amounts of health insurance recovered by the Sallees shall not be set off. This holding will be applied prospectively to all claims pending at the time of this decision and those filed hereafter.

Therefore, we make the following awards:

We award Claimant James Sallee, for his own injuries, the sum of seven thousand five hundred dollars ($7,500.00.)

We award Claimant James Sallee, as father and next friend to his children, Chris Sallee and Amy Sallee, for and in behalf of Chris Sallee and Amy Sallee, the sum of four thousand dollars ($4,000.00) each, for a total of eight thousand dollars ($8,000.00.)

We award Claimant Pam Sallee, taking into consideration the pain and suffering she suffered, the permanent disfigurement, and the length and duration of her illness, and the amount of her medical bills, the sum of seventy-five thousand dollars ($75,000.00.)

Therefore, the total amount of the awards for the Claimants is ninety thousand five hundred dollars ($90,500.00).